# EXHIBIT 1

**Private Client**

## Your Amended Policy Declaration

**Personal Home Policy**

Policy Number: HO00105302-03

Policy Period: 01/25/2019 to 01/25/2020

Amendment Effective: 03/10/2019

**Date Prepared: 03/12/2019**

### Policyholder (Named Insured)

**Clay Buchholz**
**10960 Wilshire Blvd Fl 5**
**c/o NKFSandB, LLC**
**Los Angeles, CA 90024-3708**

### Agency Name / Agency Code

**Momentous Insurance Brokerage, Inc. /**
**CA007001**
**5990 Sepulveda Blvd Ste 550**
**Van Nuys, CA 91411-2536**
**Phone: (818) 933-2700**

### Mortgagee

**Comerica Bank**

**ITS SUCCESSOR AND/OR ASSIGNS**
**PO BOX 5954**
**Springfield, OH 45501-5954**
**Number:7152540659**

### General Policy Information

**Issued: 12/11/2018**

These Declarations are a part of the policy named above and identified by the policy number above. They supersede any Declarations issued earlier. Your **Policy** will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions. See policy for details regarding the other coverages and additional coverage options.

**Policy Period From 01/25/2019 To 01/25/2020** but only if the required premium for this period has been paid and only for annual renewal periods if premiums are paid as required. Each period begins and ends at 12:01 A.M. standard time at the Residence Premises.

**Residence Premises:**

**14132 Flat Top Ranch Rd**
**Austin, TX 78732-1963**

### How You saved on this Policy with Nationwide Private Client

Protective Devices Discount
Gated Community Discount
Multiple Policy Discount

Underwritten by Crestbrook Insurance Company

P1501 (01-13)
Page 1

Insured Copy



**Private Client**

**Your Amended Policy Declaration**
**Personal Home Policy**
Policy Number: HO00105302-03
Policy Period: 01/25/2019 to 01/25/2020
Amendment Effective: 03/10/2019

## Changes Made to Your Policy Effective 03/10/2019

Scheduled item added: 908 Oakwood Dr, Largo, FL 33770-4062

| Section I | Limits Of Liability | Deductible: $5,000 All Peril |
|---|---|---|
| | | 2% of Coverage A Wind/Hail |

**Property Coverages**

| | |
|---|---|
| Coverage A - Dwelling | $6,423,200 |
| Coverage B - Other Structures | $1,284,600 |
| Coverage C - Personal Property | $4,496,200 |
| Coverage D - Loss of Use | Actual Loss Sustained |

| Section II Liability Coverages | Limits Of Liability |
|---|---|
| Coverage E - Personal Liability | $500,000 |
| Coverage F - Medical Payments to Others | $25,000 |

**Additional Residences and Insured Locations**

908 Oakwood Dr, Largo, FL 33770-4062

**Other Coverages / Options / Endorsements Applicable**

| | Coverage Limits | Premium |
|---|---|---|
| Crestbrook Protection | | $869.60 |
| Biological Deterioration Clean Up | 25% of Coverage A | $4,554.53 |
| Back Up or Overflow of Sewers or Drains | $5,000 | Included |
| Credit Card, EFT Card, Access Device, Forgery Coverage | $50,000 | $24.00 |
| Earthquake And Volcanic Eruption | Coverage C Only - Deductible 10% | Included |
| Equipment Breakdown Enhancement | $100,000 | Included |
| Extended Dwelling Replacement Cost | | Included |

Underwritten by Crestbrook Insurance Company

P1501 (01-13)
Page 2

Insured Copy


Nationwide®

**Private Client**

### Your Amended Policy Declaration
**Personal Home Policy**
Policy Number: HO00105302-03
Policy Period: 01/25/2019 to 01/25/2020
Amendment Effective: 03/10/2019

| | | |
|---|---|---|
| Fire Department Service Charge | $3,000 | $27.00 |
| Loss Assessment - Sec I | $50,000 | Included |
| Ordinance or Law | | Included |
| Identity Theft or Identity Fraud Expenses | $100,000 | $125.00 |
| Loss Assessment - Sec II | $50,000 | Included |

### Premium Summary

| | |
|---|---|
| Policy Premium | $11,477.38 |
| Other Coverages / Options / Endorsements Premium | $5,615.74 |
| **Endorsement Premium:** | **+ $13.73** |
| **New Annual Premium:** | **$17,093.12** |

### FORMS AND ENDORSEMENTS MADE PART OF POLICY

G8052TX 10/14 Important Insurance Information Cosmetic Loss to Metal Roof Coverings Exclusion
G8053TX 10/14 Important Insurance Information First Party Claim Suit Filing Limitation
P1405 05/14 Homeowner Policy
G8029TX 06/15 Important Information for Texas Policyholders
P8013TX 06/14 Texas Amendatory Endorsement
G8031TX 06/14 Texas Asbestos, Silica, Lead and Total Pollution Exclusion
P8042 05/14 Crestbrook Protection
P8010 01/13 Identity Theft or Identity Fraud Expenses Coverage
P8041 01/13 Equipment Breakdown Enhancement Endorsement

*"Deductible amounts subject to change due to Inflation - See Inflation Protection Coverage Page 9, Number 8 in your Personal Homeowner Policy"*

Underwritten by Crestbrook Insurance Company

P1501 (01-13)
Page 3

Insured Copy



**Private Client**

### Your Amended Policy Declaration
**Personal Home Policy**
Policy Number: HO00105302-03
Policy Period: 01/25/2019 to 01/25/2020
Amendment Effective: 03/10/2019

**Issued By:**     **Nationwide Private Client**

Home Office: One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office: 8877 North Gainey Center Drive • Scottsdale, Arizona 85258
A stock company wholly owned by Nationwide Mutual Insurance Company

**How to Contact Us**

Your Agent
24-Hours claims Reporting 855-473-6410

Underwritten by Crestbrook Insurance Company

P1501 (01-13)
Page 4

Insured Copy



**Private Client** | IDENTITY THEFT ASSISTANCE

IMPORTANT INFORMATION — KEEP IN A SAFE PLACE

As a Nationwide Private Client policyholder, you are eligible for the 24/7 benefits of Identity Theft Assistance through Europ Assistance USA.

ID Theft Assist℠ services:



- Contact major credit bureaus to place fraud alerts on your account

- Assistance in replacing identification documents if stolen

- Ongoing monitoring and alert of fraudulent activity

- Access to the Online Data Protection Suite software

Contact us for 24/7 assistance or to report a claim, toll-free at (855) 473-6410 in U.S. or Canada. For international calls please contact 001-317-324-0627.

If you are traveling for an extended period of time, you may consider noting the following information and taking this card with you in case you need to access your Identity Theft Assistance benefits.

Be certain to keep it in a safe place:

Policyholder name: _____

Policy number: _____

Agent name: _____

Agent phone number: _____

Agent email: _____

In case of emergency, contact:

_____

_____

www.worldwideassistance.com

nationwide.com/privateclient



Insurance overview is for informational purposes only and does not replace or modify the definitions and information contained in individual insurance policies or declaration pages, which are controlling. Terms and availability vary by state and exclusions apply. Products underwritten by Nationwide Mutual Insurance Company and Affiliates, Columbus, OH. Nationwide Private Client, Nationwide, the Nationwide N and Eagle, and Nationwide is on your side are service marks of Nationwide Mutual Insurance Company. © 2015 Nationwide. PVR-0335AO (04/15)

**Nationwide®**

CRESTBROOK_000006

**Private Client** | TRAVEL ASSIST™ PROTECTION

IMPORTANT INFORMATION — KEEP IN A SAFE PLACE

As a Nationwide Private Client policyholder, you are eligible for the 24/7 benefits of Emergency Travel Assistance through Europ Assistance USA.

When you travel more than 100 miles from home on trips of 90 days or less, Travel Assist™ provides emergency medical, financial and pre-trip support, including locating local physicians, dentist and medical facilities, replacement of medication and eyeglasses, and emergency travel arrangements.



If you need assistance while traveling, call us:
Within the US and Canada, toll-free 855-473-6410
or internationally dial 001-317-324-0627

Follow this series of prompts:
  Press 1 for Policyholder
  Press 1 for Claims, Roadside and Travel Assistance
  Press 3 for Travel Assistance
A Travel Assist representative will help you with your inquiry.

Before you go, please visit www.worldwideassistance.com to review helpful information about international travel.

With Nationwide Private Client products and services, you can rest assured you will get the support you need while traveling without having to purchase a separate policy.

If you are traveling for an extended period of time, you may consider noting the following information and taking this card with you in case you need to access your Travel Assistance benefits. Be certain to keep it in a safe place:

Policyholder name: _____

Policy number: _____

Agent name: _____

Agent phone number: _____

Agent email: _____

In case of emergency, contact:

_____

_____

Medical insurance carrier: _____

Medical insurance policy/group: _____

nationwide.com/privateclient                    **Nationwide®**

Insurance overview is for informational purposes only and does not replace or modify the definitions and information contained in individual insurance policies or declaration pages, which are controlling. Terms and availability vary by state and exclusions apply. Products underwritten by Nationwide Mutual Insurance Company and Affiliates, Columbus, OH. Nationwide Private Client, Nationwide, the Nationwide N and Eagle, and Nationwide is on your side are service marks of Nationwide Mutual Insurance Company. © 2015 Nationwide. PVR-0223AO (04/15)

CRESTBROOK_000007

# PRIVACY STATEMENT

**Thank you for choosing Crestbrook**

Our privacy statement explains how we collect, use, share, and protect your personal information. So just how do we protect your privacy? In a nutshell, we respect your right to privacy and promise to treat your personal information responsibly. It's as simple as that. Here's how.

**Confidentiality and security**

We follow all data security laws. We protect your information by using physical, technical, and procedural safeguards. We limit access to your information to those who need it to do their jobs. Our business partners are legally bound to use your information for permissible purposes.

**Collecting and using your personal information**

We collect information about you when you ask about or buy one of our products or services. The information comes from your application, business transactions with us, consumer reports, and publicly available sources. Please know that we only use that information to sell, service, or market products to you.

We may collect the following types of information:

- Name, address, and Social Security number
- Assets and income
- Property address and value
- Account and policy information
- Credit reports and other consumer report information
- Family member and beneficiary information
- Public information

**Sharing your information for business purposes**

We share your information with other Nationwide companies and business partners. When you buy a product, we may share your personal information for everyday business purposes. Some examples include mailing your statements or processing transactions that you request. You cannot opt out of these. We also share your information with your agent or producer. They use your personal information to manage your policy or account. We may also share your personal information as federal and state law requires.

**Sharing your information for marketing purposes**

We don't sell your information to anyone—period. We may share your personal information with Nationwide companies or business partners to market products to you. We have joint marketing agreements with our business partners. This means that we have partnered with them to offer you a product that might interest you. They may use your personal information to market their products. If you would like to learn more about opting out, please read the next section.

**Opting Out**

You can ask us not to share your personal information with the Nationwide family of companies listed below or our business partners to market products to you. Just remember, Nationwide offers many different types of products and services. If you would like to learn about these products from one of our companies, you may not want to opt out. You can opt out of sharing with other Nationwide affiliates and sharing with third parties.

CRESTBROOK_000008

To opt out of sharing for marketing purposes, please call us toll free at 1-866-280-1809. You may opt out at any time and your request will take effect in thirty (30) days. An opt out request from one joint customer will apply to all joint customers on the policy or account. If you have already opted out, you don't need to opt out again because your request will never expire.

We will not share the personal information of Vermont customers with the Nationwide family of companies or third parties for marketing purposes without your consent.

**Using your medical information**

We sometimes collect medical information. We may use this medical information for a product or service you're interested in, to pay a claim, or to provide a service. We may share this medical information for these business purposes if required or permitted by law. But we won't use it for marketing purposes unless you give us permission.

**Accessing your information**

You can always ask us for a copy of your personal information. Please send your privacy inquiry to the address below and have your signature notarized. This is for your protection so we may prove your identity. We don't charge a fee for giving you a copy of your information now, but we may charge a small fee in the future.

You can change your personal information at MyNationwide.com or by calling your agent. But we can't update information that other companies, like credit agencies, provide to us. So you'll need to contact these other companies to change and correct your information.

Send your privacy inquiries to the address below. Please include your name, address, and policy number. If you know it, include your agent's name and number.

Nationwide Insurance
Attn: Customer Relations—Privacy
One Nationwide Plaza, 3-04-101
Columbus, OH 43215

**A parting word...**

These are our privacy practices. They apply to all current, joint, and former clients of Nationwide Mutual Insurance Company, Nationwide Agents, and the affiliates and subsidiaries that offer auto, home, property, life insurance, banking services, and investments. This includes the following companies:

Nationwide Mutual Insurance Company
Nationwide Mutual Fire Insurance Company
Nationwide Property and Casualty Insurance Company Nationwide General Insurance Company
Nationwide Insurance Company of America Nationwide Affinity Insurance Company of America
Nationwide Agribusiness Insurance Company Nationwide Sales Solutions, Inc.
Nationwide Insurance Company of Florida
Nationwide Lloyds
Nationwide Assurance Company Nationwide Securities, LLC Nationwide Life Insurance Company
Nationwide Bank
Nationwide Advantage Mortgage Company
Titan Holdings, Inc.
Colonial County Mutual Insurance Company
Insurance Intermediaries, Inc. Crestbrook Insurance Company

CRESTBROOK_000009

CRESTBROOK INSURANCE COMPANY

## IMPORTANT INSURANCE INFORMATION

## COSMETIC LOSS TO METAL ROOF COVERINGS EXCLUSION

Crestbrook Insurance appreciates your trust in us providing your Personal Home Insurance.

Please be advised that your Personal Homeowner Policy with Crestbrook Insurance contains a Cosmetic Loss to Metal Roof Coverings Exclusion.  Please see the Texas Amendatory Endorsement to your Personal Home Policy for more details.

Should you have any questions about this exclusion or any of your insurance needs, please contact your agent for assistance.  We know you have choices in the Homeowners Insurance market and we appreciate your having selected Crestbrook Insurance.

G8052TX(10-14)                                                                                          Page 1 of 1

CRESTBROOK_000010

CRESTBROOK INSURANCE COMPANY

## IMPORTANT INSURANCE INFORMATION

## FIRST PARTY CLAIMS SUIT FILING LIMITATION

Crestbrook Insurance appreciates your trust in us providing your Personal Home Insurance.

Please be advised that your Personal Homeowner Policy with Crestbrook Insurance contains the following language:

**The limitation period for filing a suit on a first party claim is (1) two years from the date we accept or reject the claim; or (2) three years from the date of the loss that is the subject of the claim.**

Please see the Texas Amendatory Endorsement to your Personal Home Policy for more details.

Should you have any questions about this exclusion or any of your insurance needs, please contact your agent for assistance. We know you have choices in the Homeowners Insurance market and we appreciate your having selected Crestbrook Insurance.

CRESTBROOK_000011

Private Client

# *PERSONAL HOME POLICY*

Underwritten by Crestbrook Insurance Company
Home Office: One Nationwide Plaza | Columbus, Ohio 43125
Administrative Office: 8877 North Gainey Center Drive | Scottsdale, Arizona 85258
A stock company wholly owned by Nationwide Mutual Insurance Company



CRESTBROOK_000012

CRESTBROOK INSURANCE COMPANY

# *Insuring Agreement*

**We** will provide the insurance described in this policy, which includes the Declarations and attached endorsements or schedules, in return for the premium and fees, and compliance with all the policy provisions.

The applicable limits of liability and optional coverages **you** have chosen are shown on the Declarations. **We** may change the amount of coverage shown on the Declarations Page to reflect current costs and values when reconstruction cost estimates are conducted or when the policy renews. This policy applies only to loss which occurs during the policy period.

**You** agree, by accepting this policy, to advise **us** of any:
1. addition to;
2. alteration of; or
3. renovation of;

the Coverage A—Dwelling or a Coverage B—Other Structure covered under this policy. **You** agree to advise **us** or **our** agent at the start of construction and accept adjustments in coverage limits to properly reflect any increase in **Replacement Cost** of the dwelling or other structure. **We** may change the amount of coverage shown on the Declarations Page to reflect current costs and values when reconstruction cost estimations are conducted or the policy renews.

## *Definitions*

Certain words and phrases used in this policy are defined as follows:

1. **"We," "Us"** and **"Our"** refer to the company shown on the Declarations as the issuing company.

2. **"You"** and **"Your"** refer to the named **Insured** shown in this policy who resides at the **Residence Premises.** These terms also mean **your** spouse who resides in the same household.

3. **"Business"** includes:
   a. Trade, profession, occupation, or employment including self-employment performed on a full-time, part-time, or temporary basis; or
   b. Other activities performed for monetary or other compensation, except the following:
      (1) Volunteer activities for which no monetary or other compensation is received other than reimbursement for expenses incurred to perform the activity.
      (2) Providing home day care services for:
         (a) which no monetary or other compensation is received. A mutual exchange of home care services is not considered compensation; or
         (b) a relative of an **Insured.**

4. **"Insured"** means:
   a. **You** and residents of **your** household who are:
      (1) **Your** relatives.
      (2) Other persons under the age twenty-one (21) and in the care of **you** or **your** relatives.
      (3) A civil partner by Civil Union or Registered Domestic Partnership filed and recognized by the state.
      (4) A domestic partner living with you who is at least eighteen (18) years of age and sharing a common domestic life whose relationship resembles a mutually exclusive partnership such as that of a marriage; and
         (a) is financially interdependent with **you** and with whom **you** are jointly responsible for each other's common welfare.
         (b) is not a relative; and
         (c) has not been in a different domestic partner relationship within the last six months and is in the current domestic partner relationship for at least six consecutive months.

      A domestic partner does not include more than one person, a roommate or housemate whether sharing expenses equally or not, or one who pays rent to the **Insured.**
   b. A student enrolled in school full-time, as defined by the school, who was a resident of **your** household before moving out to attend school, provided the student is under the age of:

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000013

CRESTBROOK INSURANCE COMPANY

    (1) Twenty-six (26) and **your** relative; or

    (2) Twenty-one (21) and in **your** care or the care of **your** relative.

  c. Under Section **II, Insured** also means:

    (1) With respect to animals or **Watercraft** to which this policy applies, any person or organization legally responsible for these animals or **Watercraft** which are owned by **you** or any person included in 4.a. or 4.b. above. **Insured** does not mean a person or organization using or having custody of these animals or **Watercraft** in the course of any **Business** or without consent of the owner; or

    (2) With respect to a **Motor Vehicle** to which this policy applies:

      (a) Persons while engaged in **your** employ or that of any person included in 4.a. or 4.b. above; or

      (b) Other persons using the vehicle on an **Insured Location** with **your** consent.

As used throughout the policy and attached endorsements, the word "an" immediately preceding the word **"Insured,"** the words "an **Insured**" together mean one or more **Insureds.**

5. **"Insured Location"** means:

  a. the Residence Premises.

  b. the part of any other premises, structures, and grounds used by **you** as a residence and shown on the Declarations; also any of these acquired by **you** during the policy period for **your** use as a residence.

  c. a premises **you** use with premises defined in 5.a. or 5.b.

  d. a part of a premises, not owned by an **Insured**, where an **Insured** is temporarily living.

  e. vacant land, other than farm land, owned by or rented to an **Insured.**

  f. land, other than farm land, owned by or rented to an **Insured** on which a one, two, three or four-family dwelling is being built as a residence for an **Insured.**

  g. cemetery plots or burial vaults of an **Insured**.

  h. a part of a premises rented on occasion to an **Insured** for purposes other than Business.

6. **"Motor Vehicle"** means:

  a. an amphibious vehicle.

  b. a motorized land vehicle or conveyance, including motorized bicycles or mopeds, designed for travel on public roads or subject to Motor Vehicle registration.

  c. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration.

  d. any vehicle while being towed by or carried on a vehicle defined in 6.a., 6.b., or 6.c.

7. **"Residence Premises"** means the one, two, three or four-family dwelling, other structures and grounds located at the **Residence Premises** address shown on the Declarations unless otherwise indicated.

8. **"Aircraft"** means any machine or device capable of atmospheric flight, except models.

9. **"Hovercraft"** means a self-propelled motorized ground effect vehicle which travels across land or water just above the surface on a cushion of air and includes, but is not limited to, flarecraft and air cushion vehicles.

10. **"Watercraft"** means a craft principally designed to be propelled on or in water by wind, engine power or electric motor.

11. **"Actual Cash Value"** means:

  a. In the case of a total loss to buildings covered under Coverage A. or B., the policy limit or fair market value of the building, whichever is less; or

  b. In the case of a partial loss to buildings covered under Coverage A. or B., or loss to other covered property, the amount it would cost to repair or replace covered property with material of like kind and quality, whichever is less, minus a reasonable deduction for physical deterioration and depreciation, including obsolescence based upon its condition at the time of loss or the policy limit, whichever is less.

In the case of a partial loss to buildings under Coverage A. or B., the deduction for physical deterioration shall apply only to components of the building that are normally subject to repair and replacement during the useful life of that building.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000014

CRESTBROOK INSURANCE COMPANY

12. **"Foundation"** means a building's substructure including substructural walls, including but not limited to basement walls and crawl space walls.

13. **"Biological Deterioration or Damage"** means damage or decomposition, breakdown, and/or decay of manmade or natural material due to the presence of fungi, algae, lichens, slime, mold, bacteria, wet or dry rot, and any by-products of these organisms, however produced. Fungi as used above include, but are not limited to: yeasts, mold, mildew, rust, smuts, or fleshy fungi such as mushrooms, puffballs and coral fungi.

14. **"Contamination or Pollution"** means any interior or exterior presence or use, discharge, dispersal, release, migration, seepage, leakage, or escape of:
    a. solid, liquid, gaseous, or thermal irritants or contaminants, except smoke arising solely from a hostile fire or the sudden and accidental discharge from a fireplace or furnace;
    b. vapors, soot, fumes, acids, alkalis, toxic chemicals, toxic liquids, toxic gases, or waste;
    c. fuel oil and other petroleum products; or
    d. any other waste materials or other irritants, contaminants or pollutants.

15. **"Incidental Business"** means a **Business** activity, conducted on the **Residence Premises:**
    a. with gross revenues of less than $10,000 in any calendar year; and
    b. no employees of the **Incidental Business** are subject to workers' compensation or similar disability laws; and
    c. it conforms to federal, state and local laws.

    **Incidental Business** also includes a farming operation on the **Residence Premises** involving:
    a. farm employees working less than 1,250 hours; and
    b. gross annual receipt from such farming operation of less than $25,000:
    during the policy period.

    Other words are also defined. All defined words are in bold print.

# Section I—Property Coverages

## Coverage Agreements

We cover all risk of accidental direct physical loss to property described in Coverages A., B. and C. below except for losses excluded under Section I—Property Exclusions.

### COVERAGE A—DWELLING

**We** cover:

1. the dwelling on the **Residence Premises** used mainly as **your** private residence including attached structures.

2. materials or supplies on or adjacent to the **Residence Premises** for use in construction, alteration or repair of:
   a. the dwelling; or
   b. Coverage B—Other Structures.

**We** do not cover land, including land on which the dwelling is located, or the replacement, rebuilding, restoration, stabilization or value of such land, except to the extent provided in Section I—Additional Property Coverages, Land.

### COVERAGE B—OTHER STRUCTURES

**We** cover other structures on the **Residence Premises.** They must be separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered other structures.

**We** do not cover:

1. other structures used in whole or in part for **Business** purposes.

2. other structures rented or held for rental to anyone, other than a tenant of the dwelling, unless used solely as a private garage.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000015

CRESTBROOK INSURANCE COMPANY

3.  land, including land on which the structure is located, or the replacement, rebuilding, restoration, stabilization or value of such land, except to the extent provided in Section I—Additional Property Coverages, Land.

## COVERAGE C—PERSONAL PROPERTY

**We** cover personal property owned or used by an **Insured** while it is anywhere in the world. At **your** request, **we** will cover personal property owned by others. It must be on the part of the **Residence Premises** occupied by an **Insured.** This extension of coverage does not increase the limit of liability.

**Our** limit of liability for personal property normally located at an **Insured's** residence other than the **Residence Premises** is ten percent (10%) of the highest limit of liability for Coverage C applicable under this or any other policy issued by **us** or an affiliate company which provides coverage for **your** personal property. No coverage under this provision is afforded to the perils of Wind or Earthquake. This ten percent (10%) limitation does not apply to personal property:

1.  removed from the **Residence Premises** because:
    a.  of a covered loss; or
    b.  the **Residence Premises** is being repaired, renovated or rebuilt and it cannot be lived in or the property cannot be stored in it; or

2.  in transit to and from, or while in a newly acquired principal residence for sixty (60) days. The sixty (60) days start right after **you** begin to move the property.

**SPECIAL LIMITS OF LIABILITY.** Certain property is subject to special limits which do not increase the personal property limits of liability. The special limit, shown below for each numbered category, is the total limit for each loss for all property in that category.

The following special limits apply only to items lost, misplaced or stolen:
1.  $10,000 for jewelry, watches, and precious and semi-precious stones.

2.  $5,000 for furs.

3.  $5,000 for guns, including accessories.

4.  $10,000 for silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes, but is not limited to, flatware, hollowware, tea sets, trays and trophies made of or containing silver, gold or pewter.

The following special limits apply to all covered losses:
5.  $1,500 for money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, stored value cards, smart cards, and gift certificates.

6.  $5,000 for securities, accounts, bills, deeds, documents, including personal records, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, script and tickets.

7.  $5,000 for stamps, coins and medals.

The limits in 6. and 7. above:
    a.  apply no matter the medium, such as paper or computer software, on which the material exists;
    b.  include costs to research, replace, reconstruct or restore information from the lost or damaged material; and
    c.  apply only when such property is located outside of a bank vault or bank safe deposit box.

8.  $25,000 for property, on the **Residence Premises,** primarily used for **Business** purposes.

9.  $10,000 for property, away from the **Residence Premises,** primarily used for **Business** purposes.

10. $2,000 for **Watercraft** and outboard motors, including trailers, furnishings and equipment.

11. $3,000 for utility type trailers not used with **Watercraft.**

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000016

CRESTBROOK INSURANCE COMPANY

The following special limit applies only to breakage losses:

12. $50,000 for crystal, china, porcelains, figurines, statuary, sculptures, mirrors, wine bottles, glassware and similar items.

## PROPERTY NOT COVERED.

**We** do not cover:

1. articles separately described and specifically insured in this or any other insurance.

2. animals, birds or fish.

3. house or travel trailers.

4. **Motor Vehicles** or all other motorized land conveyances including the following, whether furnished by the manufacturer or an individual:
   a. their parts or equipment, whether attached to or separated from the **Motor Vehicle** or motorized land conveyance;
   b. accessory equipment; or
   c. any device or instrument, including accessories or antennas, for the transmitting, receiving, recording or reproduction of sound or picture which can be operated by the power from the electrical system of the **Motor Vehicle** or motorized land conveyance. Tapes, discs, reels, cassettes or similar items, including carrying cases for any of these, while in a motorized land vehicle shall not be considered accessory equipment.

   **We** do cover vehicles or conveyances not subject to **Motor Vehicle** registration which are:
   a. used solely to service the **Insured's** residence;
   b. designed to assist the handicapped; or
   c. a motorized golf cart while being operated to or from, or on the premises of a golf course.

5. **Aircraft** and parts.

6. property of roomers, boarders, and other tenants. Personal property, at the **Residence Premises,** belonging to roomers and boarders related to an **Insured** is covered.

7. property in an apartment regularly rented or held for rental to others by an **Insured,** except to the extent provided in Section I—Additional Property Coverages, Landlord's Furnishings.

8. property rented or held for rental to others away from the **Residence Premises.**

9. **Hovercraft** and parts.

10. **Business** data, including such data stored in or on:
    a. books of account, drawings or other paper records; or
    b. computers and related equipment.
    **We** do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market.

11. contraband and property secured or transferred in the course of illegal trade.

## COVERAGE D—LOSS OF USE

**We** cover, subject to the coverage limit which is the total limit, all of the following:

1. **Additional Living Expense.** If a covered loss makes your house or other permanent structure uninhabitable, we cover the reasonable increase in your normal living expenses that is necessary to maintain your household's usual standard of living, including the kenneling of domestic animals not primarily owned or kept for business use. We cover this increase for the reasonable amount of time required to restore your house or other permanent structure to a habitable condition, or if you or members of your household permanently relocate, the shortest amount of time

CRESTBROOK INSURANCE COMPANY

required to settle elsewhere. However, if you are newly constructing your house or other permanent structure or constructing additions, alterations, or renovations to your house or other permanent structure at the time of a covered loss, we only cover the increase in your normal living expenses incurred by you for the reasonable amount of time required to restore the house or other permanent structure to the condition it was in prior to the covered loss or twenty-four (24) consecutive months from the date of loss, whichever is less. This period of time is not limited by the expiration of this policy; and

2. **Fair Rental Value.** If a loss covered under this section requires occupants to leave that part of the Residence Premises rented to others or held for rental, we will pay its fair rental value. Payment will be for the shortest time required to repair or replace this part of the premises. This does not include expense that does not continue while the part of the Residence Premises is uninhabitable. Payment will be for the actual loss sustained or twelve (12) months from the date of loss, whichever occurs first. This period of time is not limited by the end of the policy period; and

3. **Prohibited Use.** If a civil authority prohibits your use of the Residence Premises because of direct damage to neighboring premises by a peril Insured against in this policy, we will pay the resulting loss, for up to thirty (30) consecutive days while use is prohibited, for:
   a. Additional Living Expense; and
   b. Fair Rental Value.

**We** do not cover loss or expense due to cancellation of a lease or agreement.

This coverage does not apply to an **Insured's Business,** whether conducted on or off any **Insured Location.**

No deductible applies to this coverage.

## Additional Property Coverages

These additional property coverages are subject to the policy deductible, exclusions, conditions and any special limit of liability that may apply to the property except as noted. In no event will the deductible be applied more than once to any one loss.

1. **Debris Removal.**
   a. **We** will pay reasonable expense **you** incur removing debris of:
      (1) covered property, if the peril causing the loss is covered; or
      (2) ash, dust or particles from a volcanic eruption that causes direct loss to a covered building or covered property inside a building.
   b. **We** will also pay, up to a maximum of, $2,500 for the reasonable expense **you** incur, for the removal from the **Residence Premises** tree(s) felled by the peril of Windstorm or Hail, or weight of Ice, Snow or Sleet. provided the tree(s):
      (1) damage(s) a covered structure;
      (2) does not damage a covered structure, but:
         (a) block(s) a driveway on the **Residence Premises** which prevents a **Motor Vehicle,** that is registered for use on public roads or property, from entering or leaving the **Residence Premises;** or
         (b) block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

   This coverage is additional insurance.

2. **Reasonable Repairs. We** will pay reasonable cost **you** incur for necessary repairs made solely to protect covered property from further damage, if the peril causing the loss is covered. Actions taken to repair other damaged property will be covered only if the other property is also covered under the policy and that other property was damaged by a covered cause of loss. These expenses are included in the limit of liability applying to the damaged property.

3. **Trees, Shrubs, Plants, and Lawns. We** cover trees, shrubs, plants, or lawns on the **Residence Premises** for loss caused by the following perils: fire and lightning; explosion; riot and civil commotion; **Aircraft;** vehicle not owned or operated by a resident of the **Residence Premises;** vandalism or malicious mischief; **Collapse** of a building; or, theft. Liability is limited to five percent (5%) of the Coverage A—Dwelling limit of liability, for all trees, shrubs, plants and

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000018

CRESTBROOK INSURANCE COMPANY

lawns. It is limited to $2,500 for one tree, shrub or plant. This coverage applies only if the damaged property is re-placed or repaired within one hundred eighty (180) days of the loss.

**We** do not cover property grown for **Business** purposes or are part of, or a continuation of, a forest including national forest or wildlife preserve.

This coverage is additional insurance.

4. **Fire Department Service Charge. We** will pay up to the amount stated on the Declarations for **your** liability under contract or agreement for customary fire department charges, or ordinance or statute. This applies when the charges result from the fire department being called to save or protect covered property from a covered peril. No deductible applies to this coverage.

5. **Property Removed.** Covered property removed from a premise because it is in danger from a covered peril is cov-ered for direct loss from any cause. This does not change the coverage limit.

6. **Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage.** We will pay up to the amount stated on the Declarations for:
   a. the legal obligation of an **Insured** to pay theft or unauthorized use of credit cards (including Electronic Fund Transfer Cards or Access Devices) issued to or registered in an **Insured's** name. However, we do not cover use by a resident of **your** household, a person entrusted with the credit card (Electronic Fund Transfer Card or Access Device), or any person if an **Insured** has not complied with all terms and conditions under which the credit card (Electronic Fund Transfer Card or Access Device) is issued.
   b. loss to an **Insured** caused by forgery or alteration of a check or negotiable instrument.
   c. loss to an **Insured** through good faith acceptance of counterfeit United States or Canadian paper currency.

   All losses resulting from a series of acts committed by any one person or groups of persons or in which any one per-son or groups of persons is concerned or implicated is considered one loss. This is regardless of the period of time over which the acts occur.

   **We** do not cover loss arising out of:
   a. the Business pursuits, or dishonesty of an **Insured.**
   b. identity theft or identity fraud, including a covered act as outlined in subsections a., b., or c. of this section.

   This coverage is additional insurance. No deductible applies to this coverage.

   **We** may make any investigation and settle any claim or Suit as **we** decide is appropriate. Our obligation to defend a claim or Suit ends when the amount **we** pay for the loss equals our limit of liability.

   If a claim is made or a Suit is brought against an **Insured** for liability under the Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage, **we** will provide defense at our expense by counsel of our choice.

   **We** may defend at our expense an **Insured** or an **Insured's** bank against a Suit for the enforcement of payment under the forgery coverage.

   Our duty to defend does not apply to identity theft or identity fraud.

7. **Loss Assessment. We** agree to pay your share of an assessment charged against all members of the **Association. "Association"** means the management body of the property owners. They must have common property interest with **you.** The common property must be part of the housing development where **you** live, as shown on the Declarations. **We** will pay up to the limit, shown on the Declarations, in effect at the time of the loss which results in an assessment.

   The assessment must be the result of a direct loss to property collectively owned by the **Association.** It must be caused by a peril covered under Coverage A—Dwelling of this policy, other than earthquake, volcanic eruption, or land shock waves or tremors before, during or after a volcanic eruption.

   The limit shown is the most we will pay for any one loss event, regardless of the number of assessments made relat-ing to that loss event. We will only apply one deductible, per building or structure, to the total amount of any one loss to the property described above, regardless of the number of assessments. **We** will not pay more than $10,000 for any assessment that results from a deductible in **your Association's** insurance.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000019

CRESTBROOK INSURANCE COMPANY

This coverage is excess over other valid and collectible insurance covering the **Association.**

**We** do not cover loss assessments charged against **you** or a corporation or **Association** of property owners by any governmental body.

This coverage is additional insurance.

8.  **Inflation Protection Coverage. We** may adjust the limit of liability on the Declarations for Section I—Coverages upon renewal of **your** policy.

    It is further agreed that the premium for this policy at the next anniversary date shall be for the adjusted limits of liability.

    This coverage will not reduce **our** limit of liability during the current policy period below that for which premium has been paid.

9.  **Collapse. We** cover direct physical loss to covered property described in Coverages A., B. and C. caused by the complete **Collapse** of a building structure or any part of a building structure. **Collapse** means an abrupt falling down or caving in of a building or other structure or any part of a building or other structure with the result that it cannot be occupied for its intended purpose. A building or other structure or part of a building or other structure is not considered in a state of **Collapse** if:

    a.  it is standing but in danger of falling down or caving in;

    b.  it is standing but has separated from any other part of the building;

    c.  it is standing even if it shows signs of settling, cracking, shifting, bulging, sagging, bowing, bending, leaning, shrinkage, or expansion.

    The **Collapse** must be sudden and accidental.

    The presence of any decay, insect or vermin damage must be unknown to an **Insured** prior to **Collapse.**

    Loss to an awning, fence, patio, swimming pool, underground pipe, flue, drain, cesspool, septic tank, **Foundation,** retaining wall, bulkhead, pier, wharf, or dock is not included unless the loss is a direct result of the **Collapse** of a building.

    This coverage does not increase the limit of liability applying to the damaged property.

10. **Biological Deterioration or Damage Clean Up and Removal.** In the event that a covered cause of loss results in **Biological Deterioration or Damage** to property covered under Coverages A., B., and C., **we** will pay, up to the amount shown on the Declarations, for:

    a.  the cost to clean up, remove and dispose of the **Biological Deterioration or Damage** to covered property;

    b.  the cost to tear out and replace any part of the building or other covered property needed to gain access to the **Biological Deterioration or Damage;**

    c.  the cost of testing which is performed in the course of clean up and removal of the **Biological Deterioration or Damage** from the **Residence Premises;** and

    d.  additional living expenses **you** may incur, as outlined under Coverage D., that results from items a., b. or c. above.

    The coverage amount shown on the Declarations for this Additional Property Coverage is the most **we** will pay for all loss or costs payable under this Additional Coverage. Such costs are payable only if **you** report the **Biological Deterioration or Damage** to **us** within one hundred eighty (180) days of having first discovered the **Biological Deterioration or Damage.**

    The covered cause of loss that causes or results in **Biological Deterioration or Damage** to covered property must have occurred during the policy period.

    This is an additional amount of coverage.

11. **Landlord's Personal Property.**

    When there is an apartment on the Residence Premises that is regularly rented or held for rental to others by an **Insured, we** will pay up to ten percent (10%) of the Coverage A—Dwelling limit of liability for loss to **your** appliances, carpeting and other household furnishings resulting from a covered cause of loss.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000020

CRESTBROOK INSURANCE COMPANY

This limit applies separately to each apartment on the Residence Premises and is the most **we** will pay regardless of the number of appliances, carpeting or other household furnishings involved in the loss. This coverage does not increase the limit of liability applying to the damaged property.

12. **Grave Markers. We** will pay up to $5,000 for grave or mausoleum markers located on or away from the **Residence Premises** for loss caused by a peril insured against.

This coverage does not increase the limits of liability that apply to the damaged covered property.

13. **Lock Replacement. We** will pay the reasonable expense up to $1,000 to replace or rekey the exterior door locks on **your** Residence Premises. This coverage applies only if the keys to **your** Residence Premises are stolen. **You** must notify **us** within seventy-two (72) hours of discovering the keys have been stolen. No deductible applies to this coverage.

14. **Ordinance or Law.** If a covered peril causes a loss to property covered under Coverage A—Dwelling and Coverage B—Other Structures, settlement will be based on enforcement of any ordinance or law regulating the:
    a. Construction;
    b. Repair;
    c. Renovation;
    d. Remodeling; or
    e. Demolition of the damaged building or other structure.
    The damaged or destroyed building structure must be repaired or replaced at the Residence Premises. The most **we** will pay for this coverage is one hundred percent (100%) of the Coverage A—Dwelling limit of liability shown on the Declarations.

**Special Exclusions**

**We** will not pay costs:
    a. required to replace, repair, regrade, remove, stabilize, change the contour of, or otherwise alter land, unless under or immediately surrounding the damaged building structure;
    b. resulting from the enforcement of any ordinance or law requiring the:
        (1) testing for;
        (2) monitoring;
        (3) clean up;
        (4) removal;
        (5) containment;
        (6) treatment;
        (7) detoxifying;
        (8) neutralizing, or
        (9) responding in any manner or assessing any effects of:
        **Contamination or Pollution** in or on covered buildings or other structures.
    c. resulting from the enforcement of any ordinance or law involving construction, repair, remodeling or demolition of that portion of the undamaged building structure.
        However, exclusion c. does not apply:
        (1) when it is necessary to remodel, remove or replace a portion of the undamaged building structure in order to complete repairs, replacement or remodeling of the damaged portion of the covered building structure; or
        (2) if the total damage to the covered building structure is more than fifty percent (50%) of the building's **Replacement Cost,** less any ordinance or law expenses, at the time of the loss.
    d. resulting in diminution in value of **Residence Premises.**

15. **Data Restoration. We** will pay up to a total of $5,000 for expenses incurred by **you** to replace or recreate **your** lost personal data stored on a personal computer or portable computing devices that **you** own or lease. Lost personal data must be the result of a covered loss.

16. **Refrigerated Food. We** will pay for loss to food or up to $5,000 for wine in a freezer or refrigeration unit due to temperature changes caused by:

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000021

CRESTBROOK INSURANCE COMPANY

a. A power interruption on or off the **Residence Premises**; or

b. Mechanical breakdown of the freezer or refrigeration unit. This coverage does not increase the limit of liability.
This coverage does not increase our limit of liability. No deductible applies to this coverage.

17. **Land.** If, as a result of a covered loss to the Coverage A—Dwelling or a building structure covered under Coverage B—Other Structures, the land under or immediately surrounding the dwelling or building structure requires excavation, replacement or stabilization, **we** will pay up to ten percent (10%) of the amount of loss of the dwelling or building structure for the excavation, replacement or stabilization of land expenses.
This coverage is additional insurance.

18. **Incidental Business Property. We** will pay up to $10,000 for loss to covered property used in connection with an **Incidental Business** conducted on the **Residence Premises.**

19. **Damaged Caused by Domestic Animals. We** will pay up to $5,000 for direct physical loss to covered property when such loss is caused by a domestic animal.

20. **Arson Reward. We** will pay up to a total of $5,000 for information that leads to an arson conviction associated with a fire loss to property covered by this policy. This is the most **we** will pay regardless of the number of persons providing information. This is additional coverage.

## *Property Exclusions*

### (Section I)

1. **We** do not cover loss to any property resulting directly or indirectly from any of the following.
   a. Earth Movement and Volcanic Eruption. Earth movement means: earth movement due to natural or unnatural causes, including subsidence; earthquake, including land shock waves or tremors before, during or after a volcanic eruption; landslide; mudslide; mudflow; earth shifting, rising or sinking. Volcanic eruption means: eruption, explosion, or discharge from a volcano.
   Resulting direct loss by fire, explosion or theft is covered.
   However, any resulting loss is covered unless another exclusion applies.
   b. Water or damage caused by water-borne material. Loss resulting from water or water-borne material damage described below is not covered. Water and water-borne material damage means:
      (1) Flood, surface water, waves, tidal water, overflow of water from a body of water, or water borne material from any of these;
      (2) run off of water or water-borne material from a paved surface, driveway, walkway, patio, or other similar surface; or spray from any of these, even if driven by wind.
      (3) water or water-borne material below the surface of the ground, including water or water-borne material which exerts pressure on, seeps or leaks through a building, sidewalk, driveway, **Foundation,** swimming pool, or other structure.
   However, any resulting loss is covered unless another exclusion applies.

   This exclusion 1.b. does not apply to personal property away from the **Residence Premises.**
   However, this exclusion 1.b. does apply when covered personal property is located at another residence owned by an **Insured.**
   c. Neglect, meaning neglect of the **Insured** to use all reasonable means to save and preserve property at the time of and after a loss, or when property is endangered by a covered peril.
   d. War or Warlike Acts. This includes insurrection, rebellion or revolution. Discharge of a nuclear or biological weapon is considered a warlike act even if accidental.
   e. Nuclear Hazard, meaning any nuclear reaction, discharge, radiation, or radioactive contamination, all whether controlled or not or however caused, and any consequence of any of these. Loss caused by nuclear hazard is not considered loss caused by fire, smoke, or explosion, whether these perils are specifically named in or otherwise included as a covered peril in **Section I.**
   Resulting direct loss by fire is covered.
   f. Increased Hazard, meaning any loss occurring while hazard is increased by a means within the control and knowledge of an **Insured.**

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000022

CRESTBROOK INSURANCE COMPANY

g. Intentional Acts, meaning loss resulting from an act committed by or at the direction of an **Insured** that may reasonably be expected to result from such acts, or is the intended result from such acts. Intentional acts include criminal acts. Such acts exclude coverage for all **Insureds.**

However, if loss to covered property is the result of fire, this exclusion 1.g. applies only to the **Insured** who committed or directed the act causing the fire loss. Coverage for an innocent **Insured** is limited to that **Insured's** legal interest, not to exceed the applicable limit of liability. **We** may apply reasonable standards of proof to claims for such loss.

h. **Collapse,** except as provided by **Section I—Additional Property Coverages—Collapse.** However, any resulting loss to property covered under Coverages A. and B. is covered unless otherwise excluded in this policy.

i. **Contamination or Pollution.**

j. Government Acts, meaning any loss caused by seizure, destruction, or confiscation by order of any government or public entity.

Loss caused by acts ordered by any government or public entity at the time of a fire to prevent its spread is covered if the loss caused by fire would be covered under this policy.

k. **Biological Deterioration or Damage,** except as provided by **Section I—Additional Property Coverages—Biological Deterioration or Damage** Clean Up and Removal.

l. Tsunami, meaning loss resulting from a tsunami caused by, but not limited to, any of the following:
   (1) earth movement, including:
      (a) earthquake;
      (b) volcanic eruption;
      (c) avalanche, rock or ice falls;
      (d) landslides; or
      (e) subsidence;
      whether occurring above or below sea level;
   (2) asteroids or meteorites; or
   (3) nuclear explosion.

m. Diminution in value or depreciation.

n. Power failure, meaning the failure of power or other utility services if the failure takes place off the **Residence Premises.** However, if the failure of power or other utility services results in a loss on the **Residence Premises** from a peril insured against under this policy, **we** will pay for the loss or damage to covered property caused by the peril.

This exclusion 1.n. does not apply to Section I—Additional Property Coverages, Refrigerated Food.

o. Computer error, meaning loss caused by an error in the operating programs or instructions.

p. A fault, weakness, defect or inadequacy in the:
   (1) specifications, planning, zoning;
   (2) design, workmanship, construction, materials;
   (3) surveying, grading, backfilling;
   (4) development or maintenance;
   of any property on or off the **Residence Premises,** whether intended or not. However, any resulting loss is covered unless another exclusion applies.

q. Acts or decisions of any person, group, organization or governmental body, whether intentional, negligent, wrongful or without fault. This includes the conduct or failure to act or decide by any of the aforementioned.
   However, any resulting loss is covered unless another exclusion applies.

r. Weather, Temperature or Dampness. Weather conditions include changes in temperature or air dampness. This exclusion does not apply to direct loss caused by rain, sleet, snow or hail.

s. freezing of a plumbing, heating, air conditioning or automatic fire protection sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing.
   This exclusion applies only while the dwelling is vacant, unoccupied or being constructed unless **you** have used reasonable care to:
   (1) maintain heat in the building; or
   (2) shut off the water supply and drained the system and appliance of water.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000023

CRESTBROOK INSURANCE COMPANY

If an automatic fire protective sprinkler system protects the covered building, **you** must use reasonable care to maintain the water supply and heat in the building for coverage to apply.

A plumbing system or household appliance does not include a sump pump, sump pump well or other system designed to remove subsurface water drained from the **Foundation** area.

However, any resulting loss is covered unless another exclusion applies.

t.  freezing, thawing, pressure or weight of water, snow or ice, whether driven by wind or not, to a:
   (1) fence, pavement, patio tennis court, hot tub or spa, septic system, or swimming pool;
   (2) **Foundation,** retaining wall, or bulkhead; or
   (3) pier, wharf, bridge, or dock.
   However, any resulting loss is covered unless another exclusion applies.

u.  continuous or repeated seepage or leakage of water or steam over a period of weeks, months or years from a:
   (1) heating, air conditioning or automatic protective sprinkler system;
   (2) household appliance;
   (3) plumbing system; or
   (4) water, steam or sewer pipes, or storm drains located off the **Residence Premises**.
   A plumbing system or household appliance does not include a sump pump, sump pump well or other system designed to remove subsurface water drained form the **Foundation** area.

   However, any resulting loss is covered unless another exclusion applies. If loss caused by water or steam is not otherwise excluded, **we** will cover the cost of tearing out and replacing any part of the building necessary to repair or replace the system or appliance. **We** do not cover loss to the system or appliance from which the water or steam escaped.

v.  Theft in or to a dwelling under construction or of material and supplies for use in the construction until the dwelling is completed and occupied.
   However, any resulting loss is covered unless another exclusion applies.

w.  Vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than thirty (30) consecutive days immediately before the loss. A dwelling under construction is not considered vacant. This exclusion applies to Coverages A. and B. only.
   However, any resulting loss is covered unless another exclusion applies.

x.  Loss caused by any birds, vermin, rodents or insects. Resulting breakage of glass constituting a part of a covered building is covered.
   However, any resulting loss is covered unless another exclusion applies.

y.  Loss caused by any non-domestic animals owned or kept by an **Insured.** Resulting breakage of glass constituting a part of a covered building is covered.
   However, any resulting loss is covered unless another exclusion applies.

z.  Gradual or Sudden Loss due to:
   (1) wear and tear, marring, deterioration;
   (2) inherent vice, latent defect, mechanical breakdown;
   (3) smog, rust;
   (4) smoke from agricultural smudging or industrial operations;
   (5) settling, cracking, shrinking, bulging or expansion of pavements, patios, **Foundations,** walls, floors, roofs or ceilings;
   (6) root growth, movement or action;
   If any of items 1.z.(1) through (6) cause water to escape from a plumbing, heating, air conditioning or fire protective sprinkler system or household appliance, **we** cover loss caused by the water not otherwise excluded. **We** also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. **We** do not cover loss to the system or appliance from which the water escaped.

aa.  Ordinance Or Law
   Ordinance Or Law means any ordinance or law:
   (1) Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion does not apply to the coverage that may be provided for in Ordinance Or Law under Section I—Additional Property Coverages;
   (2) The requirements of which result in a loss in value to property; or

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000024

CRESTBROOK INSURANCE COMPANY

(3) Requiring any **Insured** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of contamination or pollution.

This Exclusion applies whether or not the property has been physically damaged.

2. **We** do not cover loss to property described in Coverage C. resulting directly from any of the following:
   a. dampness or extremes of temperatures unless the direct cause of loss is rain, snow, sleet or hail.
   b. damage caused by repairing, restoration or retouching. This exclusion does not apply to jewelry, watches and furs.
   c. collision, except that occurring with a land vehicle.
   d. sinking, swamping or standing of **Watercraft,** including their outboard motors furnishings and equipment.
   e. Misappropriation or theft of an **Insured's** personal property by another **Insured.**
   f. Failure of a wine cellar or storage unit's climate control system resulting in a loss to wine due to temperature change. The failure of the climate control system must be caused by a power interruption resulting from a brown-out or blackout.

However, under exclusions 2.a. through 2.f. any resulting loss to property covered under Coverage C. is covered unless otherwise excluded in this policy.

## Property Conditions

### (Section I)

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable:
   a. to the **Insured** for more than the **Insured's** interest.
   b. for more than the limit of liability.

2. **Deductible.** The deductible amount shown on the Declarations, coverages included in the policy or endorsements attached to this policy, applicable to a covered loss, is the amount of loss paid by the **Insured.** Different deductible amounts may apply to different causes of loss. Deductibles may be stated as a specific dollar amount or as a percentage of the limit of liability for the covered property. **We** pay for covered loss above the applicable deductible amount.

   In the event that a covered loss to the dwelling equals or exceeds the Coverage A—Dwelling limit of liability **we** will waive up to $50,000 of the deductible amount. **Your** deductible will be that portion of the applicable deductible above $50,000.

   However, when all or the majority of **your** furnishings and other personal property have been removed from the **Residence Premises** more than thirty (30) consecutive days prior to a loss, and **you** have not given **us** advance notice of **your** removal of such personal property, the waiver of the deductible does not apply. The following deductible condition applies:

   In the event of a covered loss, the deductible will be the greater of:
   a. The **Section** I Deductible as shown on the Declarations;
   b. Five percent (5%) of the Coverage A—Dwelling limit of liability at the time of loss; or
   c. The deductible applicable to the cause of loss.

3. **Your Duties after Loss.** In case of loss, you must:
   a. give immediate notice to **us** or **our** agent; and also to the police in case of theft. In case of loss under the credit card coverage, also notify the credit card (Electronic Fund Transfer Card) company.
   b. protect the property from further damage. **You** must make repairs required to protect the property and also keep a record of repair expenses.
   c. as often as **we** reasonably require:
      (1) show **us** the damaged property;
      (2) provide records and documents **we** request and permit **us** to make copies; and
      (3) submit to examinations under oath and sign same. At **your** or **our** request, the exams will be conducted separately and not in the presence of any other persons except legal representation.
   d. submit to **us,** within sixty (60) days after **we** request, **your** signed, sworn proof of loss which sets forth, to the best of **your** knowledge and belief:

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000025

CRESTBROOK INSURANCE COMPANY

(1) the time and cause of loss.
(2) interest of the **Insured** and all others in the property involved and all liens on the property.
(3) other insurance that may cover the loss.
(4) changes in title or occupancy of the property during the term of the policy.
(5) specifications of any damaged property and detailed estimates for repair of damage.
(6) a list of damaged personal property showing in detail the quantity, description, **Actual Cash Value,** and amount of loss. Attach all bills and receipts that support the figures.
(7) receipts for additional living expenses and records supporting the fair rental value loss.
(8) evidence or affidavit supporting a claim under the Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage. It should state the amount and cause of loss.
(9) evidence or affidavit supporting a claim under the Identity Theft or Identity Fraud Coverage. It should include bill, receipts, or other records that support a claim for expenses under the coverage. It should state the amount and cause of loss.

4. **Loss Settlement.** Covered losses will be settled, up to the applicable limit of liability, by **us** paying:

a. Under Coverage C—Personal Property, **Replacement Cost** or the full cost to repair, at the time of loss, without deduction for depreciation.
**"Replacement Cost"** means the cost, at the time of loss, of a new article identical to the one damaged or stolen. When a new article is no longer available, **Replacement Cost** shall mean the cost of a new article similar to that damaged or stolen. It must be of comparable quality and usefulness.

**Our** limit of liability for loss shall be the lesser of:
(1) **Replacement Cost** at the time of loss;
(2) full cost of repair;
(3) any special limits of liability described in this policy or attached by endorsement; or
(4) **our** cost to repair or replace any pair of the damaged or stolen property with equivalent property.

**You** may elect not to repair or replace some or all of the damaged or stolen property. In this event, settlement will be based on the smallest of:
(1) repair cost;
(2) **Replacement Cost**; or
(3) any special limit of liability that applies.
If **you** later decide to repair or replace those items, **you** may make an additional claim within twelve (12) months after the loss for any difference between the amount paid and the amount payable if repaired or replaced. The actual repair or replacement of the property need not be completed within the twelve (12) months, but payment will not be made until proof of repair or replacement is provided to **us.**

This coverage does not apply to:

(1) Manuscripts, antiques or fine arts, which by their inherent nature cannot be replaced with new articles.
(2) Memorabilia, souvenirs, collectors' items, and other similar items whose age and history contribute substantially to their value.
(3) Property not maintained in good or workable order.
(4) Property which is obsolete or useless to **you** at the time of loss.

b. Covered losses to **your** property under **Coverage A—Dwelling** will be settled as follows:

**We** will pay the cost of repair or replacement, without deduction for depreciation and without regard to the limit of liability shown on the Declarations.

However, in the event of a covered loss to the Dwelling that occurs during construction of additions or renovations **we** will pay no more than **Actual Cash Value**:

(1) if the construction or renovation increases the **Replacement Cost** of the Dwelling more than five percent (5%) or $500,000, whichever is less, or
(2) at the time of loss **you** have not occupied the Dwelling for more than thirty (30) consecutive days due to construction or renovation.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000026

CRESTBROOK INSURANCE COMPANY

This limitation does not apply if, prior to a loss, **you** have notified **us** of such construction or renovation and **we** have provided **you** with **our** written consent.

**You** agree to:

(1) Insure **your** Dwelling to at least one hundred percent (100%) of its **Replacement Cost** as determined by **our Replacement Cost** estimation or an inspection performed by a recognized appraisal agency authorized by **us**;

(2) Repair or replace the Dwelling with materials of like kind and quality on the **Residence Premises;** or, for no greater cost, buy or build a Dwelling at another location. If **you** choose not to repair or replace, **we** will only pay **you** the cost to repair or rebuild the damaged Dwelling at the same premises prior to the loss, or the applicable limits of insurance shown on the Declarations, whichever is less;

(3) Promptly notify **us** of a renovation that increases the **Replacement Cost** of the Dwelling or Other Structure more than five percent (5%) or $500,000, whichever is less;

(4) Notify **us** prior to the start of a **renovation** which will cause **your** Dwelling to be:

(a) vacant; or

(b) not **occupied** by **you** for more than thirty (30) days.

(5) Accept annual adjustments due to **Inflation Protection Coverage;** and

(6) Pay any additional premium.

If a change in the amount of coverage for **your** Dwelling is made, the limit applying to **Coverage C—Personal Property** will be adjusted proportionately.

c. Under **Coverage B—Other Structures, we** will pay up to the applicable limit shown on the Declarations the cost to repair or replace without deduction for depreciation based on equivalent construction and use on the same premises even if **you** choose not to repair or replace.

However, in the event of a covered loss to an other structure that occurs during construction or renovation of such structure increases the **Replacement Cost** by more than five percent (5%) or $500,000, whichever is less, **we** will pay **Actual Cash Value:**

(1) unless **you** have notified **us** prior to the loss of such construction or renovation; and

(2) **we** have provided **you** with **our** written consent.

5. **Loss Payment. We** will pay all losses as outlined in the above Loss Settlement Condition 4. subject to the following:

a. In case of loss to a pair or set, **we** may elect to:

(1) repair or replace a part to restore the pair or set to its value before the loss;

(2) pay **our** cost to replace the pair or set;

(3) pay the difference between market value of the property before and after the loss; or

(4) pay full **Replacement Cost** of the pair or set provided **you** give **us** the remaining parts.

b. At **our** option, **we** may repair or replace any part of the damaged property with equivalent property, providing **we** give **you** written notice within thirty (30) days after receiving **your** signed, sworn proof of loss.

c. **We** will pay **you** unless some other person is named in this policy to receive payment. Payment will be made within thirty (30) days after **we** receive **your** proof of loss and:

(1) reach agreement with **you;**

(2) there is an entry of a final judgment; or

(3) there is a filing of an appraisal award with **us.**

d. After **we** have paid for a loss by theft or disappearance of covered property, **we** have the right to all or part of any recovered property. **You** must protect these rights and inform **us** of any value of such property.

e. After **we** have paid for a loss, **we** have the right to all or part of any salvageable property. **We** may permit **you** to keep the damaged property but **we** will reduce the amount of the loss paid to **you** by the value of the retained property.

f. After **we** have paid for loss to covered property, **we** may reduce any payment due for any subsequent loss for damage to the same covered property, unless **you** have furnished **us** with proof that the prior damage has been repaired.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000027

CRESTBROOK INSURANCE COMPANY

6. **Appraisal.** If **you** and **we** fail to agree on the amount of loss, either can request that the amount be set by appraisal. If either makes a written request for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within twenty (20) days of receipt of the written request. The two appraisers will then select a competent, impartial umpire. If the two appraisers cannot agree on an umpire within fifteen (15) days, **you** or **we** can ask a judge of a court of record in the state where the **Residence Premises** is located to select a competent, impartial umpire.

The appraisers will then set the amount of loss. If the appraisers submit a written report of an agreement to **us,** the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two of these three will set the amount of the loss. Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by **you** and **us.** Any fees for expert witnesses or attorneys will be paid by the party who hires them. Neither the umpire nor the appraisers will have a financial interest that is conditioned on the outcome of the specific matter for which they are called to serve. This is not a provision providing for or requiring arbitration.

The appraisers and umpire are only authorized to determine the **Actual Cash Value, Replacement Cost,** or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between **you** and **us.** The appraisal award cannot be used by either **you** or **us** in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent, or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon **you** and **us.** This appraisal process and authority granted to the appraisers and the umpire can only be expanded or modified by written mutual consent signed by **you** and **us.**

7. **Other Insurance and Service Agreement.** If a loss covered by this policy is also covered by:
   a. other insurance, **we** will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or
   b. a service agreement, the insurance provided by this policy is excess over any such agreement.
   Service agreement means:
      (1) a service plan;
      (2) property restoration plan;
      (3) home or appliance warranty; or
      (4) other similar service warranty; even if it is described as insurance.

8. **Suit Against Us.** No action can be brought against **us** unless there has been full compliance with the policy provisions. Any action must be started within one year after the date of loss or damage.

9. **Abandonment of Property. We** need not accept property abandoned by an **Insured.**

10. **Mortgage Clause.** The word "mortgagee" includes trustee. If a mortgagee is named in this policy, a loss payable under Coverage A. or B. will be paid to the mortgagee and **you,** as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order or precedence of the mortgages. If **we** deny **your** claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:
    a. notifies **us** of change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware.
    b. pays premium due under this policy on **our** demand, if **you** neglected to pay the premium.
    c. submits a signed, sworn proof of loss within sixty (60) days after receiving notice from **us** of **your** failure to do so. Policy conditions relating to **Your** Duties after Loss, Loss Payment, Appraisal, and **Suit** Against **Us** apply to the mortgagee.

If **we** cancel the policy, **we** will notify the mortgagee at least ten (10) days before the cancellation takes effect. If **we** pay the mortgagee for loss and deny payment to **you:**
    a. **we** are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or
    b. at **our** option, **we** may pay to the mortgagee the whole principal on the mortgage plus accrued interest. In this event, **we** will receive a full assignment and transfer of the mortgage and all securities held as collateral to the

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000028

CRESTBROOK INSURANCE COMPANY

mortgage debt. Subrogation will not impair the right of the mortgagee to recover the full amount of the mort-gagee's claim.

11. **No Benefit to Bailee.** This insurance does not benefit a person or organization that is caring for or handling **your** property for a fee.

12. **Glass Replacement. We** will replace covered glass using safety-glazing materials when required by ordinance or law.

13. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a seventy-two (72) hour period will be considered as one volcanic eruption.

14. **Protective Device Credit** If credit is given as shown on the Declarations Page, **you** agree to:
    a. maintain these devices in working order; and
    b. notify **us** promptly of any changes made in the devices or if they are removed.

15. **Policy Period.** This policy applies only to loss which occurs during the policy period.

## *Section II—Liability Coverages*

### ADDITIONAL DEFINITIONS APPLICABLE TO THESE COVERAGES

For purposes of these coverages only:

1. **"Bodily Injury"** means bodily harm, including resulting care, sickness or disease, loss of services or death. **Bodily Injury** does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm.

2. **"Property Damage"** means physical injury to or destruction of tangible property. This includes its resulting loss of use.

3. **"Personal Injury"** means:
    a. false arrest, false imprisonment, wrongful eviction, wrongful entry;
    b. wrongful detention or malicious prosecution;
    c. libel, slander, defamation of character, or invasion of rights of privacy;
    d. shock, emotional distress or mental injury; or
    e. assault and battery when committed with the intent of protecting persons.

4. **"Residence Employee"** means an **employee** of an **Insured** who performs duties in connection with maintenance or use of the **Residence Premises.** This includes household or domestic services or similar duties performed elsewhere not in connection with the **Business** of an **Insured.**

    It includes an **employee** leased to an **Insured** by a labor leasing firm, under an agreement with an **Insured,** to per-form such duties.

    **Residence Employee** does not include a temporary **employee** that substitutes for a permanent **Residence Em-ployee** on leave or to meet seasonal or short-term workload conditions.

5. **"Occurrence"** means an accident, including continuous or repeated exposure to the same general condition. It must result in **Bodily Injury, Property Damage** or **Personal Injury** caused by an **Insured.** The **Occurrence** resulting in **Bodily Injury** or **Property Damage** must be during the policy period. The **Occurrence** resulting in **Personal Injury** must be due to an offense first committed during the policy period.

6. **"Employee"** means an **employee** of an **Insured** other than a **Residence Employee.** It includes an **employee** leased to an **Insured** by a labor leasing firm under an agreement between an **Insured** and the labor leasing firm. Such em-ployees perform duties other than those performed by a **Residence Employee.**

7. **"Professional Services"** includes but is not limited to:

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000029

CRESTBROOK INSURANCE COMPANY

   a.  legal, accounting or advertising services;

   b.  preparing, approving, or failing to prepare or approve:

      (1) maps;

      (2) drawings;

      (3) opinions;

      (4) reports;

      (5) surveys;

      (6) change orders;

      (7) designs; or

      (8) specifications;

   c.  supervisory, inspection, engineering, or architectural services;

   d.  medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

   e.  any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, personal grooming or tattooing;

   f.  optometry or optical or hearing aid services, including but not limited to the prescribing, pre-paring, fitting, demon-strating or distributing of ophthalmic lenses and similar products or hearing aid services;

   g.  body piercing services;

   h.  pharmacological services; and

   i.  any other health or therapeutic service, treatment, advice or instruction.

8.  **"Suit"** means a civil proceeding in which damages because of an **Occurrence** to which this insurance applies are alleged. **Suit** includes, but is not limited to:

   a.  an arbitration proceeding in which such damages are claimed and to which the **Insured** must submit or does submit with **our** consent; or

   b.  any other alternative dispute resolution proceeding in which such damages are claimed and to which the **Insured** submits with **our** consent.

## Coverage Agreements

**COVERAGE E—PERSONAL LIABILITY** under Section II—**Liability Coverages** is replaced with the following:

**We** will pay damages an **Insured** is legally obligated to pay due to an **Occurrence** resulting from:

    (a) negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property at an **Insured Location**; and

    (b) other personal activities anywhere in the world, unless stated otherwise or an exclusion applies.

**We** will provide a defense at **our** expense by counsel of **our** choice. **We** may investigate and settle any claim or **Suit. Our** duty to defend a claim or **Suit** ends when the amount **we** pay for damages equals **our** limit of liability.

This coverage is excess over other valid and collectible insurance. It does not apply to insurance written as excess over this policy.

### COVERAGE F—MEDICAL PAYMENTS TO OTHERS

**We** will pay the necessary medical and funeral expenses incurred within three years after an accident causing **Bodily Injury.** This coverage does not apply to **you.** It does not apply to regular residents of **your** household. It does apply to **Residence Employees.** Payment under this coverage is not an admission of **our** or an **Insured's** liability. This coverage applies as follows:

1.  to a person on the **Insured Location** with consent of an **Insured.**

2.  to a person off the **Insured Location,** if the **Bodily Injury:**

   a.  arises out of a condition on the **Insured Location** or the ways immediately adjoining.

   b.  is caused by the activities of an **Insured.**

   c.  is caused by a residence **employee** of an **Insured** arising out of and in the course of employment by an **Insured.**

   d.  is caused by an animal owned by or in the care of an **Insured.**

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000030

CRESTBROOK INSURANCE COMPANY

# Additional Liability Coverages

**We** will pay the following in addition to the limits of liability.

1. **Claims Expenses. We** will pay:
   a. expenses **we** incur and costs taxed against an **Insured** in a legal action **we** defend.
   b. premiums on bonds required in a **Suit we** defend. This does not include bond amounts greater than the Coverage E limit of liability. **We** are not obligated to apply for or furnish a bond.
   c. reasonable expenses incurred by an **Insured** at **our** request, up to a maximum of $10,000 for assisting **us** in the investigation or defense of a claim or **Suit.**
   d. post-judgment interest. This must accrue after entry of the judgment. It must accrue before **we** pay or deposit in court that part of the judgment which does not exceed the coverage that applies.
   e. prejudgment interest awarded against an **Insured** on that part of the judgment **we** pay. If **we** make an offer to pay the applicable limit of liability, **we** will not pay any prejudgment interest based on that period of time after the offer.

2. **First Aid Expenses. We** will pay expenses for first aid to others incurred by an **Insured** for **Bodily Injury** covered under this policy. **We** will not pay for first aid to **you** or any other **Insured.**

3. **Damage to Property of Others. We** will pay for **Property Damage** to property of others caused by an **Insured** regardless of legal liability. **We** will pay up to $1,000 per **Occurrence,** but not more than the smallest of the **Replacement Cost** or the cost to repair the damaged property. **We** will not pay for **Property Damage:**
   a. to property covered under Section **I.**
   b. caused intentionally by an **Insured** who is age thirteen (13) or older.
   c. to property owned by or rented to an **Insured,** a tenant of an **Insured,** or a resident in **your** household.
   d. arising out of:
      (1) **Business** pursuits.
      (2) an act or omission in connection with a premises owned, rented, or controlled by an **Insured,** other than an **Insured Location.**
      (3) the ownership, maintenance, use, loading or unloading of a **Motor Vehicle, Aircraft,** or **Watercraft.**

4. **Loss Assessment.**
   **We** agree to pay **your** share of an assessment charged against all members of the **Association. "Association"** means the management body of the property owners. They must have common property interest with **you.** The common property must be part of the housing development where **you** live, as shown on the Declarations. **We** will pay up to the limit, shown on the Declarations, in effect at the time of the loss which results in an assessment. **We** will not pay more than $10,000 for any assessment that results from a deductible in **your Association's** insurance.
   The assessment must be the result of:
   a. an **Occurrence** not excluded from coverage under **Section II—Liability;** or
   b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:
      (1) is elected by the members of a corporation or **Association** of property owners; and
      (2) serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or **Association** of property owners.
   The limit shown is the most **we** will pay for any one loss event, regardless of the number of assessments made relating to that loss event. An act involving more than one director, officer or trustee is considered to be a single act.
   This coverage is excess over other valid and collectible insurance covering the **Association.**
   **We** do not cover assessments charged against **you** or a corporation or **Association** of property owners by any governmental body.

5. **Employers' Liability Coverage—Residence Employees**
   A residence **employee** is covered as follows provided such person has during the ninety (90) days immediately before the date of injury:
   a. been employed by the **Insured** for no less than fifty-two (52) hours; and
   b. earned no less than one hundred dollars ($100) in wages.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000031

CRESTBROOK INSURANCE COMPANY

Employers' Liability Coverage applies only to **Bodily Injury** that occurs during the policy period. If the **Bodily Injury** is a disease, it must be caused or aggravated by the conditions of the **Residence Employee's** employment by an **Insured**.

### 6.  Employers' Liability Coverage

**We** will pay all sums which an **Insured** is legally obligated to pay as damages because of **Bodily Injury** sustained by a **Residence Employee.**

Our total limit of liability for Employers' Liability coverage will not exceed $100,000 for all damages resulting from **Bodily Injury:**
a.  Sustained by one or more **Residence Employees** in any one accident; or
b.  Caused by disease and sustained by a **Residence Employee.**

The most **we** will pay for all damages arising out of **Bodily Injury** by disease regardless of the number of **Residence Employees** who sustain **Bodily Injury** is $500,000.

The **Bodily Injury** must be caused by accident or disease and arise out of and in the course of employment by the **Insured** while:
a.  in the United States of America, its territories or possessions, or Canada; or
b.  temporarily elsewhere if the **Residence Employee** is a citizen or resident of the United States of America or Canada.

This coverage does not apply to:
a.  Any **Suit** brought in or judgment rendered in any court outside the United States of America, its territories or possessions, or Canada or to any action on such judgment wherever brought.
b.  Liability assumed under any contract or agreement.
c.  **Bodily Injury** by disease, unless within thirty-six (36) months after the end of the policy period, written claim is made or **Suit** is brought against an **Insured** for damages because of **Bodily Injury.**
d.  Any obligation under a workers' compensation, unemployment or disability benefits law or any similar law.

### Exclusions—Employers' Liability Coverage

1.  **We** do not cover liability for additional compensation imposed on an **Insured** because of the serious and willful misconduct of an **Insured** or because of **Bodily Injury** to an **Employee** under sixteen (16) years of age and illegally employed at the time of injury.

2.  **We** do not cover liability for **Bodily Injury** arising out of **Business** pursuits of an **Insured.**

### Other Insurance

This insurance does not apply to any loss to which other valid and collectible Workers' Compensation or Employers' Liability Insurance applies.

### Conformity to Statute

Any terms of this insurance which are in conflict with the applicable Workers' Compensation Law are amended to conform to that law.

## Liability Exclusions

### (Section II)

1.  Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to **Bodily Injury, Property Damage** or **Personal Injury:**
    a.  caused intentionally by or at the direction of an **Insured,** including willful acts the result of which the **Insured** knows or ought to know is likely to follow from the **Insured's** conduct.
    b.  caused by or resulting from an act or omission which is criminal in nature and committed by an **Insured.**
    This exclusion 1.b. applies regardless of whether the **Insured** is actually charged with, or convicted of a crime.
    c.  arising out of **Business** pursuits of an **Insured.** This exclusion applies, but is not limited to an act or omission, regardless of its nature or circumstances, involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the **Business.**

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000032

CRESTBROOK INSURANCE COMPANY

This exclusion 1.c. does not apply to:

(1) activities normally considered non-business.

(2) volunteer activities related to organized charitable, religious or community groups.

(3) occasional or part time self-employed **Business** pursuits of an **Insured** under age twenty-one (21) years old (age twenty-four [24] if a full-time student).

(4) an office, school, studio, barber or beauty shop on the **Residence Premises** if noted on the Declarations or endorsement attached to the policy.

(5) home care services provided by or at the direction of an **Insured** on or from the **Residence Premises** if noted on the Declarations or endorsement attached.

(6) **Incidental Business** activities.

(7) loss arising out of the physical condition of the **Residence Premises** and resulting directly from **Business** pursuits of an **Insured** being conducted on the residence premises provided that:

    (a) any of the **Business'** employees are not subject to workers' compensation or other similar disability laws;

    (b) the **Business** does not provides home care services; and

    (c) there is no other valid and collectible insurance.

d. arising out of the rental or holding for rental of any part of any premises by an **Insured.** Exceptions, if any, are noted on the Declarations or endorsement attached to the policy.

This exclusion 1.d. does not apply to the rental or holding for rental of part of **your Residence Premises:**

(1) occasionally for the exclusive use as a residence.

(2) unless intended as a residence by more than two roomers or boarders.

(3) as a private garage.

e. arising out of any **Professional Services.**

f. arising out of premises owned or rented to an **Insured** but not an **Insured Location.**

This exclusion 1.f. does not apply to **Bodily Injury** to any **Residence Employee** arising out of and in the course of employment by an **Insured.**

g. arising out of the ownership, maintenance, use of, or loading or unloading of; entrustment or the negligent supervision by an **Insured** of; or statutorily imposed liability on an **Insured** related to the use of:

(1) an **Aircraft.**

(2) a **Motor Vehicle** or all other motorized land conveyance owned by or operated by, or rented or loaned to an **Insured.**

    This exclusion 1.g.(2) does not apply to:

    (a) a vehicle owned by an **Insured** and designed for recreation off public roads while on an **Insured Location.**

    (b) a motorized golf cart while being operated:

        (i) to or from, or on the premises of a golf course; or

        (ii) within the legal boundaries of the residential community, governed by an **Association** of property owners, in which the **Insured's** residence is located. This includes public roads within the residential community provided that a motorized golf cart can legally travel such roads.

    (c) a vehicle not subject to **Motor Vehicle** registration which is:

        (i) used to service an **Insured's** residence; or

        (ii) designed for assisting the handicapped.

    (d) a vehicle in dead storage on an **Insured Location**. Dead storage means physically prepared for long term storage.

    (e) a boat, camp, home or utility trailer not being towed or carried on a vehicle defined in general Definition 6.a..

    (f) bodily injury to any **Residence Employee** arising out of and in the course of employment by an **Insured.**

(3) a **Watercraft** owned or operated by, or rented or loaned to an **Insured:**

    (a) if the **Watercraft** is a personal **Watercraft** powered by an internal combustion engine and utilizing a water jet pump or has inboard, inboard-outdrive or outboard motor power of more than fifty (50) horsepower.

    (b) if it is a sailing vessel, with or without auxiliary power, twenty-six (26) feet or more in overall length.

    (c) while rented to others.

    (d) while being used to carry persons or property for a fee or compensation.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000033

CRESTBROOK INSURANCE COMPANY

    (e)  while being used without an **Insured's** permission.

    (f)  while being used in an official race or speed test. This exclusion does not apply to sailboats.

    (g)  if it is an airboat, air cushion or similar type **Watercraft**.

    This exclusion 1.g.(3) does not apply:

    (a)  while the **Watercraft** is stored.

    (b)  when an **Insured** rents or borrows a nonowned outboard motor boat for thirty (30) or less consecutive days.

    (c)  to **Bodily Injury** to any **Residence Employee** arising out of and in the course of employment by an **Insured**.

  (4)  a **Hovercraft**.

h.  caused by an act of terrorism or by war or warlike acts, including insurrection, rebellion or revolution. Discharge of a nuclear or biological weapon is a warlike act, even if accidental.

i.  resulting from an **Insured** transmitting a communicable disease.

j.  arising out of asbestos or any asbestos-related injury or damage including, but not limited to, any injury or damage arising out of or alleged to have arisen out of any act, error, omission, failure to warn or other duty involving asbestos, its use, exposure, existence, detection, removal, elimination or avoidance or actions arising from a failure to disclose the presence of asbestos.

k.  arising out of electromagnetic emissions or radiation-related injury or damage including, but not limited to, any injury or damage arising out of or alleged to have arisen out of any act, error, omission, failure to warn or other duty involving any electromagnetic emissions or radiation for use, exposure, existence, detection, removal, elimination or avoidance or electrical energy.

l.  arising from the exposure to, or ingestion, inhalation or absorption of, lead or lead compounds.

m.  radon or any other radioactive emissions, manmade or natural, or any related injury or damage including, but not limited to, any injury or damage arising out of or alleged to have arisen out of any act, omission, failure to warn or other duty involving radon or any other radioactive emissions, their use, exposure, existence, detection, removal, elimination or avoidance.

n.  arising out of any **Contamination or Pollution**.

    This exclusion 1.n. also applies to any claims, **Suit**, loss, cost or expense arising out of any required testing, monitoring, clean up, removal, containment, or other actions to determine or respond to the effects of **Contamination or Pollution**.

    This exclusion 1.n. does not apply to **Bodily Injury** arising out of routine lawn and garden care of an **Insured Location**.

o.  resulting from acts or omissions relating directly or indirectly to sexual molestation, corporal punishment, physical or mental abuse, harassment, including sexual harassment, whether actual, alleged or threatened.

p.  resulting from the use, sale, manufacture, delivery, transfer or possession by a person of a controlled substance(s) as defined by Federal Food and Drug Law (21 U.S.C.A Sections 811 and 812). Controlled substances include but are not limited to: cocaine; LSD; marijuana; and all narcotic drugs.

    This exclusion 1.p. does not apply to the legitimate use of prescription drugs by a person following orders of a licensed physician.

q.  **Bodily Injury** to a person eligible to receive any benefits required to be provided or voluntarily provided by any **Insured** under:

    (1)  a workers' compensation;

    (2)  an unemployment compensation;

    (3)  a non-occupational or occupational disease;

    (4)  disability benefits;

    or any similar law.

r.  any **"Bodily Injury"** to a "farm employee" employed in violation of law with the knowledge of an **Insured**.

s.  arising out of **Biological Deterioration or Damage**.

t.  resulting from acts, errors or omissions of an **Insured** acting as an officer or member of a board of directors or committee of any corporation or organization.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000034

CRESTBROOK INSURANCE COMPANY

    This exclusion 1.t. does not apply to an **Occurrence** resulting from the **Insured's** volunteer activities for a non-profit corporation, or a condominium or cooperative **Association** unless excluded elsewhere in this policy or attached endorsement.

  u. resulting from civic or public activities performed by an **Insured** for pay, other than reimbursement of expenses.

  v. sustained by a person as a result of an offense directly or indirectly related to that person's employment by an **Insured,** including wrongful termination of employment.

  w. resulting from discrimination or harassment, whether actual, alleged or threatened, due to age, race, national origin, gender, religious belief, physical or mental impairment, sexual orientation, or any other discrimination.

2. Coverage E—Personal Liability does not apply to:

  a. liability under any loss assessment contract or agreement except as provided in Section II—Additional Liability Coverages, Loss Assessment and then only up to the limit of liability shown for the coverage.

  b. liability assumed under any written or unwritten contract or agreement, or by contract or agreement in connection with any **Business** of an **Insured.**

  c. **Property Damage** to property owned, produced or distributed by an **Insured.** This includes costs or expenses incurred by an **Insured** or others at the direction of an **Insured** to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an **Insured Location.**

  d. **Property Damage** to property rented to, occupied or used by, or in the care of an **Insured.**

    This exclusion 2.d. does not apply to **Property Damage:**

    (1) caused by fire, smoke, or explosion; or

    (2) to house furnishings or premises rented to, occupied or used by or in the care of an **Insured** for which the **Insured** is legally liable.

  e. **Bodily Injury** or **Property Damage** for which an **Insured** under this policy is also an **Insured** under a nuclear energy liability policy; or would be an **Insured** but for its termination upon exhaustion of its limit of liability.

  f. **Bodily Injury** or **Personal Injury** to an **Insured** as defined in Definitions 4.a. and 4.b. This exclusion includes any actions brought against **you** or any other **Insured** to repay or pay a portion of damages with another person who may be obligated to pay damages because of **Bodily Injury** or **Personal Injury** to an **Insured.**

3. Coverage F—Medical Payments to Others does not apply to **Bodily Injury:**

  a. to a **Residence Employee** if it occurs off the **Insured Location.** It does apply if the **Bodily Injury** arises out of the **Residence Employee's** employment by an **Insured.**

  b. from a nuclear reaction, radiation or radioactive contamination, or a consequence of any of these. It does not matter that these are controlled or uncontrolled.

  c. to any person, other than a **Residence Employee** of an **Insured,** regularly residing on any part of the **Insured Location.**

4. Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to any **"Bodily Injury"** to a "farm employee" employed in violation of law with the knowledge of an **"Insured."**

## *Liability Conditions*

**(Section II)**

1. Limits of Liability. **Our** total liability under Coverage E. for all damages resulting from one **Occurrence** will not exceed the limit for Coverage E. shown on the Declarations. This is true regardless of the number of **Insureds,** claims made or persons injured.

    **Our** total liability under Coverage F. for all medical expense for **Bodily Injury** to one person resulting from one accident will not exceed the limit for Coverage F. shown on the Declarations.

2. Severability of Insurance. This insurance applies separately to each **Insured.** This condition does not increase **our** limit of liability for one **Occurrence.**

3. Duties after Loss. In case of a loss, **you** must perform the following duties. **You** must cooperate with **us** in seeing that these duties are performed.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000035

CRESTBROOK INSURANCE COMPANY

    a.  give notice to **us** or **our** agent as soon as practicable setting forth:
        (1)  identity of the policy and **Insured.**
        (2)  time, place, and facts of the accident or **Occurrence.**
        (3)  names and addresses of the claimants and witnesses.
    b.  immediately forward to **us** every document relating to the accident or **Occurrence.**
    c.  at **our** request, assist in:
        (1)  making settlement.
        (2)  enforcing a right of contribution or indemnity against a person or entity who may be liable to an **Insured.**
        (3)  conducting **Suits,** and attending hearings and trials.
        (4)  giving evidence and asking witnesses to attend.
        (5)  preserving any tangible property, or evidence, as long as **we** reasonably request.
    d.  under the coverage—Damage to Property of Others:
        (1)  submit to **us,** within sixty (60) days after the loss, a sworn proof of loss; and
        (2)  exhibit the damaged property, if within the **Insured's** control.
    e.  the **Insured** shall not, except at the **Insured's** own cost, voluntarily make a payment, assume an obligation, or incur an expense other than for first aid to others at the time of the **Bodily Injury.**

4.  Duties of an Injured Person—Coverage F—Medical Payments to Others. The injured person or someone on behalf of the injured person will:
    a.  give **us** written proof of claim, under oath if required, as soon as possible.
    b.  authorize **us** to obtain copies of medical reports and records. The injured person will submit to physical examination by a physician **we** select. This may be as often as **we** require with good reason.
    c.  authorize **us** to speak with any doctor, dentist, or other health care provider who has provided treatment.

5.  **Suit** Against **Us.** No action can be brought against **us** unless there has been full compliance with the policy provisions. No one has a right to join **us** as party to an action against an **Insured.** No action with respect to Coverage E. can be brought against **us** until the obligation of the **Insured** has been determined by final judgment or agreement signed by **us.**

6.  Bankruptcy of an **Insured.** Bankruptcy or insolvency of an **Insured** will not relieve **us** of our obligations under this policy.

## *General Policy Conditions*

1.  **HOW YOUR POLICY MAY BE CHANGED**
    a.  Any part of this policy, which may be in conflict with statutes of the state in which this policy is issued, is hereby amended to conform.
    b.  Any **Insured** will automatically have the benefit of any broadening of coverage in this edition of the policy, as of the effective date of the change, provided it does not require more premium.
        This condition 1.b. does not apply when changes made include both broadening and restrictions in the coverage provided, whether or not such changes are made through a subsequent edition of this policy or by an amendatory endorsement attached to the policy.
    c.  A waiver or change of a part of this policy must be in writing by **us** to be valid. Our request for an appraisal or examination does not waive our rights.
    d.  The premium for the coverage provided by this policy and attached endorsements is based on information in our possession. Any change or correction in this information will allow **us** to make an adjustment of the premium.

2.  **CONCEALMENT OR FRAUD**
    a.  This policy does not provide coverage for any **Insureds** if **you** or any other **Insured,** either before or after a loss, other than a loss caused by fire, has:
        (1)  intentionally concealed or misrepresented any material fact or circumstance; or
        (2)  committed any fraud or made false statements;
        relating to such loss.
    b.  This policy does not provide coverage for loss caused by fire to the **Insured** who has:
        (1)  intentionally concealed or misrepresented any material fact or circumstance; or

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000036

CRESTBROOK INSURANCE COMPANY

    (2) committed any fraud or made false statements;
    relating to this insurance.

## 3. RENEWAL

This policy is written for a specific policy period as shown on the Declarations. **We** will renew it for successive policy periods subject to the following conditions:

a. Renewal will be in accordance with the policy forms, rules, rates and rating plan in use by **us** at the time.
b. All premiums, premium installment payments and fees must be paid when due.
c. Prior to the expiration of a policy period for which premium has been paid, **we** will mail a notice to the named **Insured** for the premium required to renew or maintain the policy in effect. **We** will mail this notice to the address last known to **us** at least forty-five (45) days before the renewal date of the policy. Proof of mailing will be proof of notice.
d. **You** agree to an interior inspection of **your** home by one of **our** representatives to determine **your** continued eligibility. Such inspection will not be performed more than once a year with prior advance notice. Failure to allow an interior inspection in accordance with these terms may result in nonrenewal of **your** policy.

## 4. NONRENEWAL

a. At the end of each policy period, **we** will have the right to refuse to renew this policy.
b. If **we** elect not to renew, **we** will mail written notice to the first named **Insured,** at the address shown in this policy, at least forty-five (45) days before the renewal date of this policy. The reason(s) for nonrenewal will be included. Proof of mailing shall be proof of notice.

**We** will not refuse to renew this policy solely because:

    (1) **you** accepted **our** offer of earthquake coverage.
    (2) the **Insured** dwelling is in a damaged condition due to a total loss covered under this policy.
    (3) of an **Insured's** age.
    (4) corrosive soil conditions exist on the **Residence Premises.**

c. For nonpayment of renewal premium, coverage will terminate without notice at the end of the last policy period for which premium was paid.\

## 5. CANCELLATION DURING POLICY PERIOD

Any named **Insured** may cancel this policy at any time by returning it to **us** or by notifying **us** in writing of the future date cancellation is to take effect.

**We** may cancel this policy only for the reasons stated in this condition by notifying the first named **Insured** in writing of the reason(s) and date cancellation takes effect. This cancellation notice will be mailed to the first named **Insured** at the address shown in the policy. Proof of mailing will be proof of notice.

a. When premium has not been paid, including additional premium due to a physical change in the **Insured** property or a change in its occupancy or use, whether payable to **us** or our agent or under a finance or credit plan, **we** may cancel at any time by giving notice at least ten (10) days before cancellation takes effect.
b. When this policy has been in effect for less than sixty (60) days and is not a renewal with **us, we** may cancel for any reason except as stated below by giving notice at least twenty (20) days before cancellation takes effect.
    **We** will not cancel this policy solely because:
    (1) **you** have accepted our offer of earthquake coverage.
    (2) corrosive soil conditions exist on the Residence Premises.
c. When this policy has been in effect for sixty (60) days or more, or at any time if it is a renewal, **we** may cancel if:
    (1) the named **Insured** has been convicted of a crime having as one of its necessary elements an act increasing any hazard **Insured** against;
    (2) **we** discover fraud or material misrepresentation by either:
        (a) an **Insured** or an **Insured's** representative in obtaining this insurance; or
        (b) the named **Insured** or representative is pursuing a claim under this policy; or
    (3) **we** discover grossly negligent acts or omissions by an **Insured** or an **Insured's** representative that substantially increase any of the hazards insured against; or
    (4) physical changes in the covered property result in the property becoming uninsurable.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000037

CRESTBROOK INSURANCE COMPANY

This can be done by giving notice at least thirty (30) days before cancellation takes effect.

d. When this policy is written for a period longer than one year, **we** may cancel for any reason at its anniversary by giving notice at least forty-five (45) days before cancellation takes effect.
When this policy is cancelled, the premium for the period from the date of cancellation to the premium payment date will be refunded. The return premium will be pro rata. If the return premium is not refunded with the notice of cancellation or when the policy is returned to **us**, **we** will refund it within twenty-five (25) days after **we**:
(1) send the cancellation notice to **you**; or
(2) receive **your** written request of cancellation.

6. **POLICY TRANSFER**
This policy may be transferred to another only with our written consent.

7. **SUBROGATION**
a. When **we** have paid **you** for a loss covered under this policy and **you** receive payment for the same loss from another person, entity or organization, the amount received will be held by **you** in trust for **us** and reimbursed to **us** to the extent of our payment.
b. An **Insured** may, before loss occurs, waive in writing all rights of recovery against any person.
The **Insured** will provide **us** with proof of the waiver, when requested by **us**. If not waived, when **we** pay a loss, an **Insured's** right to recover from someone else becomes ours up to the amount **we** paid. An **Insured** must protect these rights and help **us** enforce them.
c. This condition does not apply to "Medical Payments to Others" or the "Damage to Property of Others" protection.

8. **DEATH**
If **you** die, **we** continue to insure:
a. the legal representative of the deceased, only with respect to the premises and property of the deceased covered under this policy at the time of death.
b. a member of **your** household who is an **Insured** at the time of death, but only while a resident of the Residence Premises.
c. with respect to **your** property, the person having proper custody of the property until appointment of a legal representative.

9. **ADDITIONAL INSURED - NON OCCUPANT**
An additional **Insured** may be named in this policy. The additional **Insured's** interest in the Residence Premises is protected under Coverage A. and Coverage B. The additional **Insured** is also protected under Coverage E. for liability from the ownership, maintenance, or use of the Residence Premises. This provision does not increase the amount of insurance.

This coverage does not apply to:
a. an employee;
b. a Residence Employee; or
c. a temporary employee that substitutes for a permanent Residence Employee on leave or used to meet seasonal or short term workload conditions.

10. **OPTIONAL PAYMENT OF PREMIUM IN INSTALLMENTS**
The named **Insured** may pay the premium for this policy in installments, under the terms and conditions approved where required by the Department of Insurance. For each separate installment payment there is an installment premium payment charge. **Your** agent or sales representative can provide more information.

11. **NON-SUFFICIENT FUNDS AND LATE PAYMENT CHARGES**
The company reserves the right to impose a fee for:
a. any premium that is unable to be processed due to non-sufficient funds, or if there are non-sufficient funds in an account that is being utilized for electronic funds transfer (EFT) payments.
b. any reinstatement of the policy if premium payment is received after the cancellation date. This is under the terms and conditions approved where required by the Department of Insurance.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000038

**Private Client**

## IMPORTANT INSURANCE INFORMATION

### PREMIUM INCREASE NOTICE

Thank you for choosing us for your insurance needs. We understand that you always want to be fully informed of your insurance costs. That is why we are letting you know that the premium for your upcoming policy term has increased by an amount equal to or greater than $10 or 10% from that of your previous term.

If you pay your premium by way of Electronic Funds Transfer (EFT), please note the amount of your automatic withdrawal will increase as of your renewal. You will receive a new billing statement that will show the amount and date of the increased withdrawal.

Please contact your agent if you have questions. If you object to the change in the EFT withdrawal amount you may contact us at Nationwide Private Client Solutions Center, 8877 N. Gainey Center Drive, Scottsdale, AZ 85258, or by telephone at 1-855-473-6410. Valid objections must be received no later than the fifth day before the date on which the increased EFT withdrawal is scheduled to take effect.

Thank you for placing your trust in us. It is a pleasure to serve you.

Underwritten by Crestbrook Insurance Company
G8154TX (09-16)



## NATIONWIDE PRIVATE CLIENT

Home Office: One Nationwide Plaza • Columbus, Ohio 43125
Administrative Office: 8877 North Gainey Center Drive • Scottsdale, Arizona 85258
A stock company wholly owned by Nationwide Mutual Insurance Company

In Witness Whereof, the Company has caused this policy to be executed and attested.

Robert W. Horner III
Secretary

James M. Pedersen
President

The information contained herein replaces any similar information contained elsewhere in the policy.

Underwritten by Crestbrook Insurance Company

G8001 (01-13)
Page 1 of 1

Nationwide®

CRESTBROOK_000040

CRESTBROOK INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### TEXAS AMENDATORY ENDORSEMENT

1.  The following is added to the **Insuring Agreement** section of this policy:

    **You** agree that if **you** make initial payment by check, draft, electronic funds transfer (EFT) or other remittance, the coverage afforded under this policy is conditioned on payment to **us** by the financial institution. If the payment is not honored by the financial institution, **we** will void this policy back to the inception date and **you** will not have coverage.

2.  The second paragraph of Paragraph 2. is deleted and replaced by the following:

    If the spouse ceases to be a resident of the **Policyholder's** household or household of the sole proprietor, majority shareholder or majority member, or general partner during the policy period or prior to the inception of this policy, the spouse will be considered **you** and **your** under this policy during a period of separation in contemplation of divorce and only until the effective date of another policy listing the spouse as a named **Insured**.

3.  The following definitions are added to the **Definitions** section of this policy:

    **"Fungi"** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

    **"Business day"** means a day other than a Saturday, Sunday or holiday recognized by the state of Texas.

4.  The following is added to paragraph 14. **Ordinance or Law**:

    In policy form P1404 (Personal Tenant) and P1406 (Personal Condo) the following is added to paragraph 13. **Ordinance or Law**

    If the insured property is located in an area which is eligible for coverage through the Texas Windstorm Insurance Association, the coverage described above also applies to the increased cost **you** incur due to the repair, replacement or demolition required for the dwelling to comply with the building specifications contained in the Texas Windstorm Insurance Association's plan of operation.

5.  The following is added to **Additional Property Coverages**:

    21. **Foundation Coverage**. We will pay up to one hundred percent (100%) of the Coverage A - dwelling limit of liability shown on the Declarations for settling, cracking shrinking, bulging, or expansion of a **foundation**, floor slab or footings that support the dwelling caused by seepage or leakage of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system.

    This coverage includes the cost of tearing out and replacing any part of the building necessary to repair the system from which the leakage or seepage occurred.

    We do not cover loss to the system from which the water or steam escaped.

    This coverage does not increase the limit of liability that applies to the damaged covered property.

6.  Paragraph 1.g. under **Section I—Property Exclusions** is amended as follows:

    g.  Intentional Acts, meaning loss resulting from an act committed by or at the direction of an **Insured** that may reasonably be expected to result from such acts, or is the intended result from such acts. Intentional acts include criminal acts. Such acts exclude coverage for all **Insureds**.

        However, this exclusion does not apply to an **Insured** who did not cooperate in or contribute to the creation of the loss if that **Insured** has:

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK_000041

CRESTBROOK INSURANCE COMPANY

     (1) Filed a police report; and

     (2) Cooperated with law enforcement investigation or prosecution relating to any other **Insured** causing the intentional loss.

However, if loss to covered property is the result of fire, this exclusion applies only to the **Insured** who committed or directed the act causing the fire loss. Coverage for an innocent **Insured** is limited to that **Insured's** legal interest, not to exceed the applicable limit of liability. **We** may apply reasonable standards of proof to claims for such loss.

7.  The following definitions are added to the **Definitions** section of the policy:

**"Cosmetic loss"** means:

Loss that alters the physical appearance of the metal roof covering but does not result in penetration of water through the metal roof covering and does not result in the failure of the metal roof covering to perform its intended function of keeping out the elements over an extended period of time.

**"Metal roof covering"** means:

The metal roofing material exposed to the weather, the underlayments, applied for moisture protection and all flashings required in the replacement of a metal roof covering.

8.  The following is added to **Property Exclusions:**

**3. We** do not insure for **cosmetic loss** to **metal roof coverings** on the **residence premises.**

This exclusion does not apply to loss by hail to **metal roof coverings** that will allow the penetration of water through the **metal roof covering** or that results in the failure of the **metal roof covering** to perform its intended function of keeping out the elements over an extended period of time.

9.  Under the **Property Conditions** section of this policy, the following is added to Paragraph 1. **Insurable Interest And Limit Of Liability:**

**Policy A Liquidated Demand**

A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. This provision shall not apply to personal property.

10. Under the **Property Conditions** section of this policy, paragraph 3. **Your Duties After Loss** is amended as follows:

3.  **Your Duties After Loss.** In case of loss, **you** must:

    a.  give prompt notice to **us** or **our** agent; and also to the police in case of theft. In case of loss under the credit card coverage, also notify the credit card (Electronic Fund Transfer Card) company. With respect to loss caused by windstorm or hail in the catastrophe area, as defined by the Texas Insurance Code, any claim must be filed with **us** not later than one year after the date of the loss that is the subject of the claim. However, any such claim may be filed after the first anniversary of the date of the loss for good cause shown by the person filing the claim. The limitation period for filing a suit on a first party claim is (1) two years from the date **we** accept or reject the claim; or (2) three years from the date of the loss that is the subject of the claim.

    b.  protect the property from further damage. **You** must make repairs required to protect the property and also keep a record of repair expenses.

    c.  as often as **we** reasonably require:

      (1) show **us** the damaged property;

      (2) provide records and documents **we** request and permit **us** to make copies; and

      (3) submit to examinations under oath and sign same. At **your** or **our** request, the exams will be conducted separately and not in the presence of any other persons except legal representation.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK_000042

CRESTBROOK INSURANCE COMPANY

    d.  submit to **us**, within ninety-one (91) days after **we** request, **your** signed, sworn proof of loss which sets forth, to the best of **your** knowledge and belief:

      (1)  the time and cause of loss.

      (2)  interest of the **Insured** and all others in the property involved and all liens on the property.

      (3)  other insurance that may cover the loss.

      (4)  changes in title or occupancy of the property during the term of the policy.

      (5)  specifications of any damaged property and detailed estimates for repair of damage.

      (6)  a list of damaged personal property showing in detail the quantity, description, **Actual Cash Value,** and amount of loss. Attach all bills and receipts that support the figures.

      (7)  receipts for additional living expenses and records supporting the fair rental value loss.

      (8)  evidence or affidavit supporting a claim under the Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage. It should state the amount and cause of loss.

    **We** must request a signed, sworn proof of loss within fifteen (15) days after **we** receive **your** written notice, or **we** waive **our** right to require a proof of loss. Such waiver will not waive **our** other rights under this policy.

      (9)  evidence or affidavit supporting a claim under the Identity Theft or Identity Fraud Coverage. It should include bill, receipts, or other records that support a claim for expenses under the coverage. It should state the amount and cause of loss.

11. Under the **Property Conditions** section of this policy, paragraph 5.c. is replaced with the following:

    c.  If **we** notify **you** that **we** will pay **your** claim, or part of **your** claim, **we** must pay within five (5) **Business Days** after **we** notify **you**. If payment of **your** claim or part of **your** claim requires the performance of an act by **you, we** must pay within five **Business Days** after the date **you** perform the act.

12. Under the **Property Conditions** section of this policy, paragraph 8. **Suit Against Us** is amended as follows:

    8.  **Suit Against Us.** No action can be brought against **us** unless there has been full compliance with the policy provisions. Action must be brought against **us** within two (2) years and one (1) day from the date the cause of action first accrues. A cause of action accrues on the date of the initial breach of **our** contractual duties as alleged in the action.

13. Under the **Property Conditions** section of this policy, paragraph 10. **Mortgage Clause** is replaced by the following:

    10. **Mortgage Clause.** The word "mortgagee" includes trustee. **We** will pay for any covered loss of or damage to buildings or structures to the mortgagee shown in the Declarations as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order or precedence of the mortgages. The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building structure.

      a.  If **we** deny **your** claim because of **your** acts or because **you** have failed to comply with the terms of this policy, the mortgagee has the right to receive loss payment if the mortgagee:

        (1)  At **our** request, pays any premium due under this policy, if **you** have failed to do so;

        (2)  Submits a signed, sworn statement of loss within 91 days after receiving notice from **us** of **your** failure to do so; and

        (3)  Has notified **us** of any changes in ownership, occupancy or substantial changes in risk known to the mortgagee.

      All of the terms of this policy will then apply directly to the mortgagee.

      Failure of the mortgagee to comply with a.(1), a.(2), or a.(3) above shall void this policy as to the interest of the mortgagee.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK_000043

CRESTBROOK INSURANCE COMPANY

    b.  If **we** pay the mortgagee for any loss or damage and deny payment to **you** because of **your** acts or because **you** have failed to comply with the terms of this policy:

        (1)  The mortgagee's rights under the mortgage will be transferred to **us** to the extent of the amount **we** pay.

        (2)  The mortgagee's right to recover the full amount of the mortgagee's claim will not be impaired.

        At **our** option, **we** may pay the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, **your** mortgage and note will be transferred to **us** and **you** will pay **your** remaining mortgage debt to **us**.

    c.  If this policy is cancelled, **we** will give the mortgagee specifically named in the Declarations written notice of cancellation.

        If **we** cancel the policy, **we** will give the mortgagee the same number of days' notice of cancellation **we** give to **you**.

        If **you** cancel the policy, **we** will give the mortgagee notice of cancellation to be effective on the date stated in the notice. The date of cancellation cannot be before the 10th day after the date **we** mail the notice.

        **We** will not give notice of cancellation to any successor or assignee of the mortgagee named in the policy.

    d.  If the property described under Coverage A – Dwelling or Coverage B – Other Structures is foreclosed upon under the deed of trust, the mortgagee may cancel this policy of insurance and will be entitled to any unearned premium from this policy.

        The mortgagee must credit any unearned premium against any deficiency owed by the borrower and return any unearned premium not so credited to the borrower. The unearned premium will be figured using the customary pro rata procedures.

    e.  If **we** elect not to renew this policy, the mortgagee specifically named in the Declarations will be given 30 days' written notice of the nonrenewal.

14.  Under the **Property Conditions** section of this policy, the following paragraphs are added:

**Our Duties After Loss**

    a.  No later than fifteen (15) days after **we** receive **your** written notice of claim, **we** must:

        (1)  Acknowledge receipt of the claim.

        If **our** acknowledgment of the claim is not in writing, **we** will keep a record of the date, means and content of **our** acknowledgment;

        (2)  Begin any investigation of the claim; and

        (3)  Specify the information **you** must provide in accordance with Paragraph 3. **Your Duties After Loss** above.

        **We** may request more information if during the investigation of the claim such additional information is necessary;

    b.  After **we** receive the information **we** request, **we** must notify **you** in writing whether the claim will be paid or has been denied or whether more information is needed:

        (1)  Within fifteen (15) **Business Days**; or

        (2)  Within thirty (30) days if **we** have reason to believe the loss resulted from arson;

    c.  If **we** do not approve payment of **your** claim or require more time for processing **your** claim, **we** must:

        (1)  Give the reason for denying **your** claim; or

        (2)  Give the reasons **we** require more time to process **your** claim. But **we** must either approve or deny **your** claim within forty-five (45) days after requesting more time.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK_000044

CRESTBROOK INSURANCE COMPANY

**Residential Community Property Clause**

This policy, subject to all other terms and conditions, when covering residential community property, as defined by state law, shall remain in full force and effect as to the interest of each spouse covered, irrespective of divorce or change of ownership between the spouses unless excluded by endorsement attached to this policy, until the expiration of the policy or until cancelled in accordance with the terms and conditions of this policy.

**Catastrophe Claims**

If a claim results from a weather-related catastrophe or a major natural disaster, each claim-handling deadline shown in C. Duties After Loss and J. Loss Payment is extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather-related event which:

1.  Is declared a disaster under the Texas Disaster Act of 1975; or
2.  Is determined to be a catastrophe by the Texas Department of Insurance.

15. Under **Section II—Liability Exclusions**, the following is added to Paragraph 1.a.:

However, this exclusion does not apply to **Bodily Injury** or **Property Damage** resulting from the use of reasonable force by an **Insured** to protect persons or property;

16. Under **Section II—Liability Exclusions**, paragraph 1.i is replaced by the following:

i.   which arises out of the transmission of sickness or disease by an **Insured** through sexual contact.

Under **Section II—Liability Exclusions**, the following is added to Paragraph 1.o.:

For the purposes of this exclusion, abuse means an act which is committed with the intent to cause harm.

17. Under **Section II—Liability Conditions**, the following condition is added:

**Notice Of Offer To Settle Or Of Settlement Of Claim**

a.  **We** will notify **you** in writing of any initial offer to settle a claim against **you** under this **Section II— Liability Conditions**. **We** will give **you** notice within ten (10) days after the date the offer is made.

b.  **We** will notify **you** in writing of any settlement of a claim against **you** under this **Section II— Liability Conditions**. **We** will give **you** notice within thirty (30) days after the date of the settlement.

18. Under the **General Policy Conditions** section of this policy, paragraph 4.a. is amended as follows:

a.  At the end of each policy period, **we** will have the right to refuse to renew this policy.

   (1) **We** may not refuse to renew this policy because of claims for losses resulting from natural causes.

   (2) **We** may not refuse to renew this policy solely because **you** are an elected official.

19. Under the **General Policy Conditions** section of this policy, paragraph 5. **CANCELLATION DURING POLICY PERIOD** is replaced by the following:

5.  **CANCELLATION DURING POLICY PERIOD**

Any named **Insured** may cancel this policy at any time by returning it to **us** or by notifying **us** in writing of the future date cancellation is to take effect.

**We** may cancel this policy only for the reasons stated in this condition by notifying the first named **Insured** in writing of the reason(s) and date cancellation takes effect. This cancellation notice will be mailed to the first named **Insured** at the address shown in the policy. Proof of mailing will be proof of notice.

a.  When premium has not been paid, including additional premium due to a physical change in the **Insured** property or a change in its occupancy or use, whether payable to **us** or **our** agent or under a finance or credit plan, **we** may cancel at any time by giving notice at least ten (10) days before cancellation takes effect.

b.  If this policy has been in effect for less than sixty (60) days and is not a renewal policy, **we** may not cancel this policy unless:

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK_000045

CRESTBROOK INSURANCE COMPANY

    (1) **We** identify a condition that:

        (a) Creates an increased risk of hazard;

        (b) Was not disclosed in the application for insurance coverage; and

        (c) Is not the subject of a prior claim;

    (2) Before the effective date of the policy, **we** do not accept a copy of a required inspection report that:

        (a) Was completed by an inspector licensed by the Texas Real Estate Commission or who is otherwise authorized to perform inspections; and

        (b) Is dated not earlier than the 90th day before the effective date of the policy.

        An inspection report is deemed accepted unless **we** reject it before the 11th day after the date **we** receive it;

    (3) The Texas Department of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state;

    (4) **You** submit a fraudulent claim; or

    (5) There is an increase in the hazard covered by this policy that is within **your** control and that would produce an increase in the premium rate of this policy.

    The effective date of cancellation cannot be before:

    (1) The 10th day after **we** mail notice if **we** cancel for reason (3), (4), or (5) above.

    (2) The 30th day after **we** mail notice if **we** cancel for any other reason.

  c. **We** will not cancel this policy solely because:

    (1) **you** have accepted **our** offer of earthquake coverage.

    (2) corrosive soil conditions exist on the Residence Premises.

  d. If this policy has been in effect 60 days or more, or at any time if it is a renewal policy, **we** may not cancel this policy unless:

    (1) **You** do not pay the premium or any portion of the premium due.

    (2) The Texas Department of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state.

    (3) **You** submit a fraudulent claim.

    (4) There is an increase in the hazard covered by this policy that is within **your** control and that would produce an increase in the premium rate of this policy.

    The effective date of cancellation cannot be before the 10th day after **we** mail the notice. **Our** notice of cancellation must state the reason for cancellation.

  e. If we cancel, any unearned premium will be refunded no later than 15 business days after the effective date of cancellation or termination of the policy.

  f. **We** may not cancel this policy solely because **you** are an elected official.

20. Under the **General Policy Conditions** section of this policy, paragraph 4. **REFUSAL TO RENEW** is replaced by the following:

**1.** **We** may not refuse to renew this policy because of claims for losses resulting from natural causes.

**2.** **We** may not refuse to renew this policy solely because **you** are an elected official.

**3.** **We** may refuse to renew this policy if **you** have filed three or more claims under the policy in any three year period that do not result from natural causes..

If **you** have filed two claims in a period of less than three years, **we** may notify **you** in writing, that if **you** file a third claim during the three-year period, **we** may refuse to renew this policy by providing **you** proper notice of **our** refusal to renew as provided in **4.** below. If **we** do not notify **you** after the second claim, **we** may not refuse to renew this policy because of losses.

A claim does not include a claim that is filed but is not paid or payable under the policy.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK_000046

CRESTBROOK INSURANCE COMPANY

**4.** If **we** refuse to renew this policy, **we** must deliver to **you**, or mail to **you** at **your** mailing address shown on the declarations page and any mortgagee named on the declarations page, written notice of **our** refusal to renew not later than the 30th day before the date on which this policy expires. Proof of mailing will be sufficient proof of notice. If **we** fail to give **you** proper notice of **our** decision not to renew, **you** may require **us** to renew the policy.

**All other provisions of this policy apply.**

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

P8013TX (06-14)

CRESTBROOK_000047

CRESTBROOK INSURANCE COMPANY

## IMPORTANT INSURANCE INFORMATION

### Asbestos, Silica, Lead and Total Pollution Exclusion

Thank you for the opportunity to provide your insurance protection. As your insurance provider, we like to keep you informed of important issues that relate to your policy.

Your Crestbrook policy does not cover damage caused directly or indirectly from asbestos, silica, lead and total pollution.  This notice does not replace the language in your policy.

Should you have any questions about this or your policy in general, please contact your agent.

Thank you for choosing Crestbrook Insurance. We value your business.

G8031 TX (06-14)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CRESTBROOK PROTECTION

For an additional premium the following coverages apply:

1. The following is added to the definition of **Insured:**

   Trusts or other entities owned by an **Insured** with a financial interest in the **Residence Premises** are protected under Coverage A—**Dwelling** (Coverage A—**Unit Owners Building Items** for P1406—**Personal Condo Policy**) and Coverage B—**Other Structures.** Coverage also applies under Coverage E—**Personal Liability** for liability from the ownership, maintenance, or use of the **Residence Premises.** This provision does not increase the amount of insurance.

   This coverage does not apply to:

   a. an **employee;**

   b. a **Residence Employee;** or

   c. a temporary employee that substitutes for a permanent **Residence Employee** on leave or used to meet seasonal or short term workload conditions.

Section I—**Property Coverages** is amended as follows:

2. Under Coverage C—**Personal Property, Special Limits of Liability,** the following apply;

   a. Item 1. limit is increased to $25,000.

   b. Item 3. is eliminated in its entirety.

   c. Item 4. is eliminated in its entirety.

   d. Item 5. limit is increased to $5,000.

   e. Item 12. limit is increased to $100,000.

3. Under Coverage D—**Loss of Use, Additional Living Expense** is deleted and replaced with the following:

   **Additional Living Expense.** If a covered loss requires **you** to leave the **Residence Premises, we** will pay the reasonable increase in living expenses **you** incur to maintain **your** normal standard of living. **We** cover this increase for the reasonable amount of time required to restore **your** Dwelling or other permanent structure to a habitable condition, or if **you** or members of **your** household permanently relocate, the shortest amount of time required to settle elsewhere. However, if **you** are newly constructing **your** Dwelling or other permanent structure or constructing additions, alterations, or renovations to **your** Dwelling or other permanent structure at the time of a covered loss, **we** only cover the increase in **your** normal living expenses incurred by **you** for the reasonable amount of time required to restore the Dwelling or other permanent structure to the condition it was in prior to the covered loss. This period of time is not limited by the expiration of this policy.

4. **Additional Property Coverages** is amended as follows:

   Paragraph 1.b. of **Debris Removal** is replaced with the following:

   b. **We** will pay the reasonable expenses to remove debris of a covered loss and the property that caused that covered loss. **We** will also pay up to a total of $5,000 from the **Residence**

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000049

**Premises** to remove trees from the **Residence Premises** if felled by the peril of windstorm, hail, weight of ice or snow or sleet when there is no damage to covered property.

Paragraph 3. **Trees, Shrubs, Plants and Lawns** is replaced with the following:

3. **Trees, Shrubs, Plants and Lawns. We** will pay up to five percent (5%) of the coverage limit for Coverage A—**Dwelling** but no more than $10,000 for any one tree, shrub, or plant. Landscaping does not include forestry or brush.

   **We** will only pay for losses caused by:

   a. aircraft;

   b. fire, lightning or explosion;

   c. riot or civil commotion;

   d. a vehicle not owned or operated by someone who lives at the **Residence Premises;** or

   e. theft, attempted theft, vandalism or malicious mischief.

   This coverage applies only if **you** restore the damaged landscaping within one hundred eighty (180) days of the loss.

   **We** do not cover property that is grown for **Business** purposes or property that is part of, or a continuation of, a forest including national forest or wildlife preserve.

   This coverage is additional insurance.

Paragraph 13. **Lock Replacement** is replaced with the following:

13. **Lock Replacement. We** will pay the reasonable expense to replace or rekey the exterior door locks on **your Residence Premises.** This coverage applies only if the keys to **your Residence Premises** are stolen. **You** must notify **us** within seventy-two (72) hours of discovering the keys have been stolen. No deductible applies to this coverage.

Paragraph 14. **Ordinance or Law** is amended as follows:

   The following sentence is deleted:

   > The most **we** will pay for this coverage is one hundred percent (100%) of the Coverage A— **Dwelling** limit of liability shown on the Declarations.

Paragraph 15. **Data Restoration** is replaced with the following:

15. **Data Restoration. We** will pay up to a total of $25,000 for expenses incurred by **you** to replace or recreate **your** lost personal data stored on a personal computer or portable computing devices that **you** own or lease. Lost personal data must be the result of a covered loss.

Paragraph 19. **Damaged Caused by Domestic Animals** is replaced by the following:

19. **Damaged Caused by Domestic Animals. We** cover direct physical loss to covered property when such loss is caused by a domestic animal. The maximum **we** will pay for this coverage is $25,000.

5. The following are added to **Additional Property Coverages:**

   **Water Shut-Off Device Coverage.** After **your** first covered water damage loss by this policy, **we** will pay for reasonable costs **you** incur up to $5,000 for the installation of an approved water shut-off device. This payment will not increase the amount of coverage. This additional coverage only applies if the loss exceeds the location deductible.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000050

**Kidnap and Ransom Expense Coverage.**

**We** will pay up to $25,000 to reimburse any of the following expenses related to a **Kidnapping** of an **Insured:**

a.  attorney fees to negotiate a settlement;

b.  lost income of the kidnapped **Insured;**

c.  travel;

d.  lodging costs; and

e.  telephone costs.

No coverage applies to ransom payments caused by or in any way related to the **kidnapping** of an **Insured.**

**Kidnapping** is defined as the crime of unlawfully seizing and carrying away a person by force or fraud, or seizing and detaining a person against his or her will with intent to carry away at a later time.

**Pet Injury Coverage.** If **your** pet is injured as a result of a covered loss, **we** will pay up to $5,000 for the medical expenses for the resulting injuries. Coverage applies only to expenses for those injuries resulting directly from the covered cause of loss. This limit is the maximum **we** will pay for a covered loss regardless of the number of pets injured.

**Disability Alterations Coverage.** If **you** or an **Insured** residing in **your** household is permanently disabled by an accidental injury, **we** will pay to update the **Residence Premises** to meet minimum standards for the disability. **We** will pay up to five percent (5%) of the Coverage A—**Dwelling** limit of liability stated on the Declarations up to a maximum of $50,000.

**Realty Tax Increased Assessment Coverage. We** will pay up to $25,000 for any additional county tax assessments if the assessment is increased following a covered total loss and such loss was the cause of the tax increase. This coverage only applies to the first assessment generated after **your** home has been reconstructed.

Section I—**Property Conditions** is amended as follows:

6.  Paragraph 4.b. of **Loss Settlement** is deleted and replaced with the following:

b.  Covered losses to **your** property under Coverage A—**Dwelling** and Coverage B—**Other Structures** will be settled as follows:

**We** will pay the cost of repair or replacement, without deduction for depreciation and without regard to the limit of liability shown on the Declarations.

However, in the event of a covered loss to the Dwelling that occurs during construction of additions or renovations **we** will pay no more than **Actual Cash Value:**

(1)  if the construction or renovation increases the replacement cost of the Dwelling or Other Structures more than five percent (5%) or $500,000, whichever is less; or

(2)  at the time of loss **you** have not occupied the Dwelling for more than thirty (30) consecutive days due to construction or renovation;

This limitation does not apply if, prior to a loss, **you** have notified **us** of such construction or renovation and **we** have provided **you** with **our** written consent.

**You** agree to:

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000051

(1) Insure **your** Dwelling and Other Structures to at least one hundred percent (100%) of its replacement cost as determined by **our** replacement cost estimation or an inspection performed by a recognized appraisal agency authorized by **us;**

(2) Repair or replace the Dwelling or Other Structures with materials of like kind and quality on the **Residence Premises;** or, for no greater cost, buy or build a Dwelling at another location. If **you** choose not to repair or replace, **we** will only pay **you** the cost to repair or rebuild the damaged Dwelling or Other Structures at the same premises prior to the loss, or the applicable limits of insurance shown on the Declarations, whichever is less.

(3) Promptly notify **us** of a renovation that increases the replacement cost of the Dwelling or Other Structures more than five percent (5%) or $500,000, whichever is less;

(4) Notify **us** prior to the start of a **renovation** which will cause **your** Dwelling to be:

    i.    vacant; or

    ii.    not occupied by **you** for more than thirty (30) consecutive days;

(5) Accept annual adjustments due to **Inflation Protection Coverage;** and

(6) Pay any additional premium.

If a change in the amount of coverage for your Dwelling is made, the limit applying to Coverage C—**Personal Property** will be adjusted proportionately.

7.    Paragraph 4.c. of **Loss Settlement** is deleted in its entirety.

8.    Paragraph 2. **Deductible** of Section I—**Property Conditions** is replaced with the following:

2.  **Deductible.** The deductible amount shown on the Declarations or endorsements attached to this policy, applicable to a covered loss, is the amount of loss paid by the **Insured.** Different deductible amounts may apply to different causes of loss. Deductibles may be stated as a specific dollar amount or as a percentage of the limit of liability for the covered property. **We** pay for covered loss above the applicable deductible amount.

The deductible will not apply to a covered loss of more than $50,000. This waiver of deductible does not apply to:

a.  special deductibles for wind, hurricane, hail, or earth movement including earthquake; or

b.  separate coverage deductibles contained within policy provisions or shown on the Declarations.

9.  **Earth Movement or Volcanic Eruption**

**We** insure for direct physical loss to property covered under Coverage C—**Personal Property** caused by earthquake or volcanic eruption including land shock waves or tremors before, during or after a volcanic eruption. Volcanic eruption means eruption, explosion or discharge from a volcano. One or more earthquake shocks or volcanic eruptions that occur within a seventy-two (72) hour period constitute a single earthquake. This coverage does not increase the limits of liability stated in this policy. This coverage does not increase the limit of liability applying to Coverage C—**Personal Property.**

**Exclusions**

a.  Paragraph 1.a. of Section I—**Property Exclusions** is deleted and replaced by the following:

Except as provided under 7. above, Earth Movement means earth movement due to natural or unnatural causes, including subsidence; earthquake, including land shock waves or tremors be-

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000052

fore, during or after a volcanic eruption; landslide; mudslide; mudflow; earth shifting, rising or sinking. Volcanic Eruption means eruption, explosion, or discharge from a volcano.

Resulting direct loss by fire, explosion or theft is covered.

However, any resulting loss is covered unless another exclusion applies.

b. The following exclusions are added:

**We** do not cover loss resulting directly or indirectly from flood of any nature or waves, including tidal wave and tsunami, whether;

(1) caused by;

(2) resulting from;

(3) contributed to by; or

(4) aggravated by earthquake or volcanic eruption.

c. **Filling Land**

This coverage does not include the cost of filling land.

### Section I—**Property Conditions**

The following replaces any other deductible provision in this policy with respect to any one loss covered under this endorsement:

**Deductible**

The earthquake and volcanic eruption deductibles are shown on the Declarations. It replaces any other deductible in this policy for covered earthquake and volcanic eruption loss. **We** will pay only that part of loss over the earthquake and volcanic eruption deductible percentage shown or the policy deductible, whichever is greater. The total deductible amount will not be less than $1000.

How the earthquake deductible is calculated. In order to determine **your** earthquake or volcanic eruption deductible, **you** multiply the deductible percentage by the Coverage C—**Personal Property** limit of liability as shown in the Policy Declarations.

10. Coverage F—**Medical Payments to Others**

When Section II—**Personal Liability** is purchased for this policy from us, the limit of liability is increased to the limit shown on the Declarations.

11. The following is added to **General Policy Conditions:**

**Family Safety**

**We** will pay up to $25,000 for counseling services to help an **insured** after a covered loss or **occurrence.** This coverage will also apply for an **insured** if a victim of a stalking, home invasion or abduction. Payment will be excess of any such services provided by **your** medical insurance and the provider of the services will need to be approved by **us** prior to use. Coverage will apply for a period of up to one year from the date of a covered loss or **occurrence.**

**All other provisions of this policy apply.**

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000053

CRESTBROOK INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## IDENTITY THEFT OR IDENTITY FRAUD EXPENSES COVERAGE

Coverage is subject to all terms and conditions of the policy, except as changed by this endorsement.

In consideration of the premium charged, the policy is amended to provide coverage for **Identity Theft or Identity Fraud.** Coverage is subject to all terms and conditions in the policy, except as changed by this endorsement. It is agreed that coverage is hereby amended as follows:

**Additional Definitions applicable:** For purposes of this endorsement only:

1. **"Identity Theft or Identity Fraud"** means the act of knowingly using or transferring without legal authority personal identifying information of an **Insured** such as name, social security number, driver's license number, bank account number(s) or credit card number(s) with the intent to commit, or to aid or abet another to commit, any illegal activity that constitutes a misdemeanor or felony under any applicable state or local law or violation of federal law.

2. "Expenses" means:
   a. Costs of executing affidavits or similar documents attesting to theft or fraud required by credit grantors, credit agencies or similar financial institutions.

   b. Costs for certified mail to credit grantors, credit agencies, or similar financial institutions and law enforcement agencies.

   c. Lost income resulting from time taken off work to complete theft or fraud affidavits, talk to or meet with credit grantors, credit agencies or similar financial institutions, law enforcement agencies and or legal counsel. Payment of lost income is included within the **Identify Theft or Identity Fraud Expense** Coverage Limit of Liability and payable as outlined in this endorsement.

   d. Loan application fees for re-applying for a loan or loans where the original application is rejected solely because the lender received incorrect credit information.

   e. Reasonable attorney fees incurred by **you** as a result of **Identity Theft or Identity Fraud** to:
      (1) Defend lawsuits brought against an **Insured** by financial institutions, merchants, or collection agencies;
      (2) Remove any civil or criminal judgments  wrongly entered against an **Insured;** or
      (3) Challenge the completeness or accuracy of any information  in a consumer credit report.

   f. Charges incurred for long distance telephone calls to law enforcement agencies, merchants, credit grantors, credit agencies or similar financial institutions to report or discuss an actual **Identity Theft or Identity Fraud.**

The following additional coverage is added under Section **I:**

### Identity Theft or Identity Fraud Expenses

Any act or series of acts committed by one or more persons, or in which such person or persons are aiding or abetting others against an insured, is considered to be one identity theft or identity fraud, even if a series of acts continues into a subsequent policy period.

- **Identity Theft or Identity Fraud** must occur while this coverage is part of **your** policy; and

- **Identity Theft or Identity Fraud Expenses** must be incurred while this coverage is part of your policy or within one hundred eighty (180) days after this coverage is terminated.

If this coverage is terminated, **our** total liability for **Expenses** incurred by **you** during the one hundred eighty (180) days after the termination will not exceed the amount equaling the difference between

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000054

CRESTBROOK INSURANCE COMPANY

the limit at the time coverage terminated and the amount **we** already reimbursed you during that policy period.

**We** may offer, at **our** option, to refer **you** to a firm that:

* **you** can authorize to work on your behalf to assist you in reporting and addressing the effects of **Identity Theft or Identity Fraud** to which coverage applies;
* will consult with **you** on measures **you** might take if **you** reasonably suspect that **you** have already become, or may become a victim of **Identity Theft or Identity Fraud** to which this coverage applies; or
* if **we** do provide **you** with such a referral, **we** will pay, subject to the terms of the referral we provide, that firm's charges for the work they perform consistent to the terms of **our** referral, and those charges will not be subject to the limits for **Identity Theft or Identity Fraud** coverage.

**We** will pay up to the limit shown on the Declarations for **Expenses** incurred by an **Insured** as the direct result of any single **Identity Theft or Identity Fraud** first discovered or learned of during the policy period. **Our** total liability for **Identity Theft or Identity Fraud Expenses** Coverage **you** incur during the policy period will not exceed this limit regardless of the number of instances or when they occurred, or the number of persons making a claim for **Identity Theft or Identity Fraud.** Payment of lost income is included within the **Identify Theft or Identity Fraud Expenses** Coverage Limit of Liability and payable up to the amounts shown below:

**Lost Income Payment Schedule**

| Identity Theft or Identity Expenses Limit of Liability | Fraud Lost Income Per Day Maximum | Total Lost Income Limit |
|---|---|---|
| $ 25,000 | $ 250 | $ 5,000 |
| $ 50,000 | $ 500 | $10,000 |
| $100,000 | $1,000 | $20,000 |

This coverage is additional insurance.

No deductible applies to Identity **Theft or Identity Fraud Expenses Coverage.**

**EXCLUSIONS**
The following additional exclusions apply to this coverage:

We do not cover:
1. **Expenses** arising out of the business pursuits of any **Insured.**

2. **Expenses** incurred due to any fraudulent, dishonest or criminal act by an **Insured** or any person acting in collusion with an Insured, or by any authorized representative of an **Insured,** whether acting alone or in collusion with others.

3. Loss other than **expenses.**

4. Loss insured under the Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage, under Section I of the policy.

**SECTION I—CONDITIONS**
Under **"Your Duties after Loss"** the following is added:

In case of loss, **you** must submit to **us,** within sixty (60) days after **we** request, **your** signed, sworn proof of loss which sets forth, to the best of **your** knowledge and belief evidence or affidavit supporting a claim including bills, receipts, or other records that support a claim for **Expenses** under **Identity Theft or Identity Fraud Expenses** Coverage. It should state the amount and cause of loss.

All other provisions of this policy apply.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK_000055

CRESTBROOK INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EQUIPMENT BREAKDOWN ENHANCEMENT ENDORSEMENT

As respects this Equipment Breakdown Enhancement Endorsement, this endorsement changes coverage provided by this policy. Read the entire endorsement carefully to determine rights, duties and what is and is not covered.

"Equipment Breakdown" coverage is subject to a $100,000 per Occurrence Limit of Liability.
"Equipment Breakdown" coverage is subject to a $500 per Occurrence Deductible.

### DEFINITIONS

The following **Definitions** are added as they relate to coverage under this endorsement:

1. "Equipment Breakdown."

    "Equipment Breakdown" as used herein means:

    **a.** Physical loss or damage both originating within:

    **(1)** Boilers, fired or unfired pressure vessels, vacuum vessels, and pressure piping, all normally subject to vacuum or internal pressure other than static pressure of contents, excluding:

    **(a.)** waste disposal piping;

    **(b.)** any piping forming part of a fire protective system; and

    **(c.)** any water piping other than:

    **1)** boiler feed water piping between the feed pump and the boiler;

    **2)** boiler condensate return piping; or

    **3)** water piping forming part of a refrigerating or air conditioning system used for cooling, humidifying or space heating purposes

    **(2)** All mechanical, electrical, electronic or fiber optic equipment; and

    **b.** Caused by, resulting from, or consisting of:

    **(1)** Mechanical breakdown;

    **(2)** Electrical or electronic breakdown; or

    **(3)** Rupture, bursting, bulging, implosion, or steam explosion. However,

    "Equipment Breakdown" will not mean:

    Physical loss or damage caused by or resulting from any of the following; however if loss or damage not otherwise excluded results, then we will pay for such resulting damage:

    **(1)** All losses excluded in the underlying policy; and

    **(2)** Loss, damage, cost or expense directly caused by, contributed to by, resulting from or arising out of the following causes of loss:

    Fire, lightning, combustion explosion, windstorm or hail, weight of snow, ice or sleet, falling objects, smoke, aircraft or vehicles, riot or civil commotion, vandalism, sinkhole collapse, volcanic action, leakage from fire extinguishing equipment, water, water damage, earth movement and flood.

2. "Green" as used means products, materials, methods and processes certified by a "Green Authority" that conserve natural resources, reduce energy or water consumption, avoid toxic or other polluting emissions or otherwise minimize environmental impact.

3. "Green Authority" as used means an authority on "Green" buildings, products, materials, methods or processes certified and accepted by Leadership in Energy and Environmental Design (LEED ), "Green" Building Initiative Green Globes, Energy Starr Rating System or any other recognized "Green" rating system.

3. "Motor Vehicle" as used herein means any self propelled land or amphibious vehicle.

CRESTBROOK_000056

CRESTBROOK INSURANCE COMPANY

## SECTION I - Property Coverages

The following **Coverage Agreements** are deleted and replaced with the following:

**We** cover all risk of accidental direct physical loss to property described in Coverages A, B and C below, including "equipment breakdown", except for losses excluded under Section I – Property Exclusions.

## SECTION I - Additional Property Coverages

The following **Additional Property Coverages** are added as they relate to coverage under this endorsement:

### 1. Expediting Expense

When an "equipment breakdown" results in damage to covered property, "we" pay the reasonable cost to:

a.   make temporary repairs;

b.   expedite permanent repairs; and

c.   expedite permanent replacement

Reasonable extra cost means the extra cost of temporary repair and of expediting the repair of "your" damaged property including overtime and the extra cost of express or other rapid means of transportation.

The most "we" will pay for loss or damage under this Additional Coverage is $10,000.  This Additional Coverage does not increase the per occurrence limit for Equipment Breakdown Coverage

### 2. Refrigerated Property

"We" pay for loss of perishable goods due to spoilage resulting from lack of power, light, heat, steam or refrigeration caused by an "equipment breakdown" to personal property covered by this policy.

The most "we" will pay for loss or damage under this Additional Coverage is $10,000. This Additional Coverage does not increase the per occurrence limit for Equipment Breakdown Coverage.

### 3. Pollutant Clean Up and Removal

"We" pay for pollutant clean up and removal for loss resulting from an "equipment breakdown."

The most "we" will pay for loss or damage under this Additional Coverage is $10,000. This Additional Coverage does not increase the per occurrence limit for Equipment Breakdown Coverage.

### 4. Off-Premises Coverage

We will pay for loss or damage to covered property resulting from a covered "Equipment Breakdown" while temporarily at a premises or location that is not a "residence premises". This coverage does not apply to any "Motor Vehicle".

The most "we" will pay for loss or damage under this Additional Coverage is $10,000. This Additional Coverage does not increase the per occurrence limit for Equipment Breakdown Coverage.

## SECTION I – Property Exclusions

The following **Property Exclusions** are deleted and replaced with the following:

In the Personal Home Policy P1405:

**z. (2)** Latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

In the Personal Condo Policy P1406, this replaces item **y.(2).**

CRESTBROOK_000057

CRESTBROOK INSURANCE COMPANY

## SECTION I – CONDITIONS

The following **Conditions** are deleted and replaced with the following:

### 4. Loss Settlement

    **a.** We will pay you the amount you spend to repair or replace your Covered Property damaged by an "Equipment Breakdown". Our payment will be the lesser of:

        **(1)** The cost at the time of the "Equipment Breakdown" to repair the damaged Covered Property;

        **(2)** The cost at the time of the "Equipment Breakdown" to replace the Covered Property with property of like kind, capacity, size and quality; or

        **(3)** The amount you actually spend that is necessary to repair or replace the damaged property.

    **b.** As respects your Covered Property, if the cost of repairing or replacing only a part of the Covered Property is greater than:

        **(1)** The cost of repairing the Covered Property; or

        **(2)** The cost of replacing the entire Covered Property on the same site,

    We will pay the lesser amount.

    The repair parts or replacement Covered Property must be:

        **(1)** Of like kind, capacity, size and quality; and

        **(2)** Used for the same purpose.

### 16.
"Equipment Breakdown" coverage does not extend beyond the "Residence Premises" except as provided by the Off Premises Coverage under Additional Coverages.

### 17. Green Environmental, Safety, and Efficiency Improvements

If Covered Property requires repair or replacement due to an "Equipment Breakdown", we will pay;

    **a.** The "your" additional cost to repair or replace that property with equipment that is better for the environment, safer, or more efficient than the equipment being repaired or replaced.

    **b.** The additional reasonable and necessary fees incurred by the Insured for an accredited professional certified by a "Green Authority" to participate in the repair or replacement of physically damaged Covered Property as "Green".

    **c.** The additional reasonable and necessary cost incurred by the Insured for certification or recertification of the repaired or replaced Covered Property as "Green".

    **d.** The additional reasonable and necessary cost incurred by the Insured for "Green" in the removal, disposal or recycling of damaged Covered Property.

    **e.** The Loss of Use (if covered within the Policy to which this Equipment Breakdown Enhancement Endorsement – Green Environmental and Efficiency Improvements is attached) loss during the additional time required for repair or replacement of Covered Property, consistent with "Green", in the coverages above.

However, "we" will not pay more than 150% of what the cost would have been to repair or replace such property with like kind and quality inclusive of fees, costs, and any loss of use loss incurred as stated above.

These **Conditions** will be part of, and not an addition to, the limit of liability per loss or any other sublimits of this Policy.

CRESTBROOK_000058