# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| CLAY BUCHHOLZ and LINDSAY BUCHHOLZ,<br>　　　*Plaintiffs*<br><br>v.<br><br>CRESTBROOK INSURANCE COMPANY d/b/a NATIONWIDE PRIVATE CLIENT,<br>　　　*Defendant* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§    Case No. 1:20-Cv-449-RP |

## O R D E R

    Before the Court are Plaintiff's Motion to Compel (Dkt. 57) and Crestbrook's Opposed Motion for Protective Order and to Quash Subpoena (Dkt. 58), both filed July 14, 2021, and the associated response, reply, and surreply briefs. On July 15, 2021, the District Court referred the motions to the undersigned Magistrate Judge for resolution, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

### I.　　Background

    In this insurance dispute, Plaintiffs Clay and Lindsay Buchholz sue Defendant Crestbrook Insurance Company d/b/a Nationwide Private Client ("Crestbrook") over water and mold damage to their home. Crestbrook paid out $745,778 for five of Plaintiffs' claims, but denied the sixth. Plaintiffs assert claims of breach of contract, bad faith, and violations of the Texas Insurance Code. They seek a declaratory judgment that the insurance policy they purchased from Crestbrook covers the loss at their home, as well as actual and exemplary damages, interest, and attorneys' fees and costs. Crestbrook denies the allegations and asserts various affirmative defenses, including that Plaintiffs' claims are barred by exclusion and exceptions to coverage in their insurance policy.

Plaintiffs now seek the deposition of Crestbrook's President, Paul VanDenBosch, asserting that he "possesses personal knowledge regarding the Buchholzes' insurance claims and actively involved himself in Crestbrook's analysis of those claims." Dkt. 57 at 1. Crestbrook contends that the noticed deposition would be a harassing "apex" deposition under Federal Rule of Civil Procedure 26(c)(1), arguing that: "Because VanDenBosch does not have any unique information about the facts in dispute in this case, his deposition would impose a burden on Crestbrook without yielding discoverable information." Dkt. 58 at 2. Crestbrooks seeks a protective order and also asks the Court to quash a subpoena Plaintiffs issued for VanDenBosch's deposition under Rule 45(d)(3).

## II.  Legal Standards

Rule 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Accordingly, the scope of discovery is broad. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). "A discovery request is relevant when the request seeks admissible evidence or 'is reasonably calculated to lead to the discovery of admissible evidence.'" *Id.* (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 820 (5th Cir. 2004)).

Under Rule 26(c)(1), a party from whom discovery is sought may move for a protective order. "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." *Id.* The movant bears the burden of showing that a protective order is necessary, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Equal Emp't Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017). The Court has broad discretion in determining whether to grant a motion for protective order. *See Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985).

Under Rule 45(d)(3)(A)(iv), a court must quash or modify a subpoena that subjects a person to an undue burden. Whether a subpoena is reasonable must be determined according to the facts of the case. *Wiwa*, 392 F.3d at 818.

With respect to apex depositions:

> "Federal courts permit the depositions of high-level executives, sometimes referred to as apex executives, when conduct and knowledge at the highest levels of the corporation are relevant to the case." *Gaedeke Holdings VII, Ltd. v. Mills*, [ ] 2015 WL 3539658, at *3 (N.D. Tex. June 5, 2015). ["]A district court has authority to prevent or alter apex depositions under the Federal Rules to avoid duplication, harassment, and burdensomeness." *Schmidt v. Goodyear Tire & Rubber Co.*, 2003 WL 27375845 (E.D. Tex. Jan. 13, 2003). "One long-established factor considered by courts in determining whether an apex deposition should be taken is whether the individual has unique personal knowledge of the matter in the case." *Id.*

*Langley v. Int'l Bus. Machs. Corp.*, No. A-18-CV-443-LY, 2019 WL 4577115, at *4 (W.D. Tex. Sept. 20, 2019); *see also Sanchez v. Swift Transp. Co. of Az., L.L.C.*, No. PE:15-CV-15, 2016 WL 10589438, at *3 (W.D. Tex. Apr. 22, 2016) (same).

### III.    Analysis

Crestbrook argues that VanDenBosch "did not review any coverage recommendations on Plaintiffs' claims and did not participate in making any coverage determinations on those claims." Dkt. 58 at 4-5. Plaintiffs' claims were handled not by VanDenBosch, but by "rank-and-file claims adjusters and claims managers" working at the direction of Director of Property Claims Jason Jackson, who was deposed as its corporate representative under Rule 30(b)(6). *Id.* at 3. Crestbrook submitted a declaration from Jackson stating that: "At no time did Mr. VanDenBosch play any role in the handling of Plaintiffs' claims." Dkt. 58-4 ¶ 8. Crestbrook contends that "Jackson is the highest-ranking employee at Crestbrook with working knowledge of the claims handling and

denial of coverage that are in dispute in this action." Dkt. 58 at 2. There are three executives between Jackson and VanDenBosch. *Id.*; Dkt. 58-4 (Jackson Dec.) ¶ 7.

Plaintiffs argue that deposing VanDenBosch is relevant to all of their claims, particularly their bad-faith claim, in which they allege that Crestbrook unreasonably denied their sixth insurance claim. Plaintiffs contend that VanDenBosch "took a particular interest in Crestbrook's handling of" their claims and was "informed of and involved with" Plaintiffs' claims on two occasions. Dkt. 57 at 2, 4-5.

First, Plaintiffs cite an email chain reflecting that Crestbrook had to increase its allocated reserves as a result of Plaintiffs' claims. In the emails, VanDenBosch:

- Requested "a review/write up on these files";

- Received an explanation of each of Plaintiffs' claims, the damages in question, the amounts paid, and the coverage decisions;

- Inquired whether "the water claims [are] below above and beyond what we received as a large loss notice?"; and

- Stated: "[W]e simply cannot afford to have situations as outlined below. Our investment in our teams and their ability to understand and manage the risks we receive are the front line of our success. What I see below is sloppy, at best. We can no longer blame the past for our misses and we have to ensure we are ready for the future."

Dkt. 57 at 2-3; Dkt. 57-1; Dkt. 58-8. As Crestbrook points out, however, this email exchange took place in February 2020, after all of Plaintiffs' claims were approved or denied.[1] Dkt. 58 at 5.

Second, Plaintiffs cite Jackson's deposition testimony that he provided VanDenBosch an update on their claims in a call he believed took place after Plaintiffs filed suit. Dkt. 57-2 at 6-8, Jackson Tr. at 32:1-9, 33:23-34:4. Crestbrook submitted a teleconference invitation to discuss the large loss notification for Plaintiffs' claims on March 12, 2020 – one day before Plaintiffs filed suit and, once again, months after their claims had been approved or denied. Dkt. 60-5. Plaintiffs

---

[1] Plaintiffs filed their first claim April 26, 2019; Crestbrook denied their sixth claim on December 2, 2019.

4

dispute that the date of the Jackson's phone call with VanDenBosch is established and contend that their claims were still under review in February 2020, but even if so, there is no indication that VanDenBosch has unique personal knowledge of any such review.

The Court finds that Crestbrook has shown good cause why VanDenBosch should not be deposed. Plaintiffs have not shown that VanDenBosch was personally involved in the claims decisions, including any decisions to deny or delay payment, which is the basis of their bad faith claim. Rather, the two instances in which VanDenBosch received information about the claims came well after the decisions were made. Nor have Plaintiffs shown that VanDenBosch has unique personal knowledge of any facts in this case. Therefore, his deposition would present an undue burden under Rules 26(c)(1) and 45(d)(3)(A)(iv).

### IV.  Conclusion

Based on the foregoing, **IT IS ORDERED** that Crestbrook's Opposed Motion for Protective Order and to Quash Subpoena (Dkt. 58) is **GRANTED** and Plaintiff's Motion to Compel (Dkt. 57) is **DENIED**. The Court hereby issues a protective order with respect to the Notice of Deposition of Paul VanDenBosch and quashes the subpoena for VanDenBosch's testimony.

**IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Robert Pitman.

**SIGNED** on August 11, 2021.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE